579 A.2d 1352

**Condemnation of Lands of Frank Swidzinski and Shirley J. Swidzinski in Summit Township, Butler County, Pennsylvania by WTG Central, Inc.**

**Appeal of Frank and Shirley SWIDZINSKI.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1990.

Decided Aug. 1, 1990.

Murray S. Shapiro, Butler, for appellants.

Jan Z. Krasnowiecki, Pepper, Hamilton & Sheetz, Philadelphia, with him, Thomas W. King, III, Dillon, McCandless & King, Butler, for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Frank Swidzinski and Shirley J. Swidzinski, the condemnees, appeal an order of the Court of Common Pleas of Butler County which dismissed their preliminary objections to a petition to approve a bond filed by WTG–Central, Inc. (WTG).

WTG is a common carrier of interstate telecommunications, under the regulatory auspices of the Federal Communications Commission. In its petition for approval of a bond filed pursuant to Section 41 of the Act of April 29, 1874, P.L. 73, *as amended,* repealed by the Act of December 21, 1988, P.L. 1444, *formerly* 15 P.S. § 3022[1], WTG alleges that it is a public utility corporation having the power of eminent domain pursuant to Section 322 of the Business Corporation Law, Act of May 5, 1933, P.L. 364, added by the Act of August 27, 1963, P.L. 1381, *as amended,* 15 P.S. § 1322[2]. The petition alleges that it is condemning an easement over the condemnees' property to install a fibre optics communications line. The petition, which had been authorized by WTG's board of directors, contained a surety bond in an unlimited amount. WTG sent a letter by first class mail to the condemnees in care of the address listed in the tax records for the property, informing them that the petition would be presented on November 23, 1988. On that date, the condemnees did not appear and the bond was approved. On December 19, 1988, the condemnees filed the preliminary objections which are the subject of this litigation, in which they made a number of challenges to WTG's condemnation. WTG filed a motion to strike the preliminary objections, arguing that the only issue involved on the petition was the adequacy of the bond. Before the trial court heard argument on the preliminary objections and response thereto, WTG, having learned that the condemnees had a Butler County residence, filed another petition to approve the bond nunc pro tunc; this petition was identical to the initial petition except that it was served upon the condemnees by registered mail.

Following argument on the matter, the trial court denied the condemnees' preliminary objections, holding that the

1. The 1874 act was repealed by the Associations Code, 15 Pa.C.S. §§ 101–9506 and the provisions at issue in the present case are contained in 15 Pa.C.S. § 1511. The Association Code, which took effect on October 1, 1989 is not applicable to the present case as WTG's petition was filed prior to the effective date of the Code.

2. See Footnote 1.

sole method of challenging WTG's power to condemn was through an action in equity. The court also denied the petition to approve the bond nunc pro tunc because of the prior approval of the initial petition. The condemnees then appealed to the Superior Court. WTG filed a motion to quash the appeal, alleging that the Superior Court did not have jurisdiction of the appeal and that the order denying preliminary objection was not a final order. The Superior Court transferred the appeal and the motion to quash to this Court. We ordered that the motion to quash be argued at the same time as the argument on the merits.

WTG asserts that the trial court's order denying the condemnee's preliminary objection is interlocutory and thus not appealable. For the reasons that follow we will grant the motion to quash.

We must note initially that the questions involved in the present case have troubled the courts of this Commonwealth since the enactment of the Eminent Domain Code, Act of June 22, 1964, Sp.Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101 to 1–903. Prior to the time of the Code's enactment, courts of equity had played a substantial role in eminent domain proceedings. It is well established that the sovereign's power of eminent domain permitted it to take property for a public use. *McMasters v. Commonwealth*, 3 Watts 292 (Pa.1834); *Commonwealth v. Plymouth Coal Co.*, 232 Pa. 141, 81 A. 148, *affirmed*, 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713 (1911). While the right of eminent domain is exclusively in the sovereign, the legislature may delegate this power; "the body to which the power is entrusted has no authority beyond that legislatively granted." *Interstate Cemetery Company Appeal*, 422 Pa. 594, 598, 222 A.2d 906, 909 (1966). Courts of equity were often called upon to decide whether a proposed taking was for a public purpose. *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938); *McSorley v. Fitzgerald*, 359 Pa. 264, 59 A.2d 142 (1948).

Resort to equity on the question of public purpose was not permitted in all instances. For example, in cases of

public utility corporations, such as here, the legislature often provided that such corporations, before exercising the legislatively granted power of eminent domain, were required to apply for and receive a determination from the Public Utility Commission (or its predecessor) that the proposed taking was for a public purpose. Even here, confusion existed. As the Supreme Court stated in *Redding v. Atlantic City Electric Co.*, 440 Pa. 533, 538–39, 269 A.2d 680, 683 (1970):

> There is a line of cases in which it is stated that PUC approval is only a preliminary step and that the scope and validity of a particular condemnation remains for a subsequent determination. *Duquesne Light Company v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954); *Kearns v. Pennsylvania Public Utility Commission*, 201 Pa. Superior Ct. 174, 191 A.2d 700 (1963); *Reed v. Pennsylvania Public Utility Commission*, 174 Pa. Superior Ct. 132, 100 A.2d 399 (1953). In a number of cases this Court and the Superior Court have affirmed PUC orders when the PUC did not decide merely whether the service to be furnished as a result of the taking was necessary for the public convenience but rather questions concerning the validity and scope of the taking. For example: in *Dunk v. Pennsylvania Public Utility Commission*, 434 Pa. 41, 252 A.2d 589 (1969), we affirmed the order of the Superior Court, 210 Pa. Superior Ct. 183, 232 A.2d 231 (1967), affirming the decision of the PUC granting a certificate to an electric company. One issue that the PUC decided (and to which the decision was upheld by both the Superior Court and this Court) was whether the taking was 'necessary for its (the electric company's) corporate use' within the meaning of Section 1, 15 P.S. 3272. Certainly this was not a preliminary step but rather went directly to the power of the company to take the right of way. See, also the following in which the PUC decided questions beyond whether the proposed service was necessary for the public convenience. *Clemmer v. Pennsylvania Public Utility Commission*, 207

Pa. Superior Ct. 388, 217 A.2d 800 (1966) (the proper width of the easement); *West Penn Power Company v. Pennsylvania Public Utility Commission,* 199 Pa. Superior Ct. 25, 184 A.2d 143 (1962) (PUC denied application after finding service to be furnished was necessary and proper in public interest); *Charch v. Pennsylvania Public Utility Commission,* 183 Pa. Superior Ct. 371, 132 A.2d 894 (1957) (approval of taking within 300 feet of a dwelling house).

The confusion was further compounded by the fact that the Legislature, in granting certain public utility companies the right of eminent domain, did not make prior approval of the Public Utility Commission a prerequisite in exercising the power. *See, e.g., McConnell Appeal,* 428 Pa. 270, 272 n. 1, 236 A.2d 796, 798 n. 1 (1968) (comparing natural gas companies which do not need preapproval with other utilities which do). In the present case, WTG was authorized to exercise the power by the Act of June 5, 1947, P.L. 424, *as amended,* repealed by the Act of December 21, 1988, P.L. 1444, *formerly* 15 P.S. § 3304 which provided for Public Utility Commission approval "with respect to any *intra*state lines...." WTG asserts that the lines in question are purely for *inter*state purposes and the condemnees do not challenge this assertion. It is clear that the Legislature has not made preapproval of the Public Utility Commission necessary before WTG exercised its power of eminent domain.

The final turn in this seeming maze was the passage of the Eminent Domain Code, more specifically Section 406 thereof, which provided for the filing of preliminary objections as the sole method of challenging, *inter alia,* "the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated...." 26 P.S. § 1–406 (Supp.1990–91). In its first opportunity to analyze the relationship between Section 406 and the exercise of the eminent domain power by a public utility where PUC preapproval was not required, the Supreme Court held that equity was no longer an available

method to challenge the power to take and that preliminary objections under Section 406 were the sole vehicle by which to make such a challenge. *McConnell.* Mr. Justice (later Chief Justice) Roberts, in a dissenting opinion joined by two other members of the Court, stated:

> I cannot agree with the majority's conclusion that the procedure for contesting the validity of this taking is governed by the Eminent Domain Code of 1964. Section 901 of that code declares: 'This act shall not ... repeal, modify or supplant any law insofar as it confers the authority or *prescribes the procedure for condemnation* of rights-of-way or *easements* for occupation by water, electric, *gas,* oil and/or petroleum products, telephone or telegraph lines used directly or indirectly in furnishing service to the public. If the condemnation for occupation by water, electric, gas, oil and/or petroleum products, telephone or telegraph lines consists of the taking of a fee, all provisions of this act shall be applicable.' (Emphasis supplied.) This section is a clear and unmistakable legislative command that, when certain public utilities condemn less than a fee, the procedure to be followed is not changed by the Eminent Domain Code of 1964, but rather is the same as that which obtained prior to passage of the code.... I think it clear that the proper route for objection to the *validity* of the taking should be classified as part of the condemnation procedure not the determination of damages and thus the procedure antedating the code should apply.

*McConnell,* 428 Pa. at 274, 236 A.2d at 798–99 (citations omitted) (emphasis in original).

Less than three years later, the Supreme Court was again presented with a similar question in this area. An electric company condemned an easement after obtaining the necessary approval from the PUC. A bond was tendered but before the company entered the land and took possession, the landowners filed an equity action seeking to enjoin construction of the lines. The company filed preliminary objections alleging that equity had no jurisdiction; the

chancellor denied the preliminary objections and the company appealed. The landowners filed a motion to quash, arguing that an order dismissing the preliminary objections was not appealable. Then, as now, an order dismissing preliminary objections, was interlocutory and generally not appealable.[3] *West Homestead Borough School District v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970). At that time, however, immediate appeals from even interlocutory orders if the question involved was one of jurisdiction were allowed.[4] The Court stated in discussing the motion to quash:

> In our recent decision of *West Homestead*.... we stated that equity was without power to act and thus that a jurisdictional question ... was raised when the legislature provided a statutory remedy which was mandatory and exclusive. We stated that no jurisdictional question was raised when the statutory remedy was permissive or alternative or when a traditional equity principle (such as the existence of an adequate remedy at law) would call for the equity court to withhold the exercise of its jurisdiction.

*Redding*, 440 Pa. at 536, 269 A.2d at 682. When confronted with its holding in *McConnell* that equity had no jurisdiction after the enactment of the Eminent Domain Code, the Court retreated somewhat and stated:

> Upon reconsideration of the statutory wording, we believe our statement that the act expressly provides for PUC hearings on the necessity or propriety of the taking was too strong. All that the statute states is that no condemnation shall be effected until the PUC shall have found 'that the service to be furnished by the company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of

3. Under the Eminent Domain Code, a denial of preliminary objections is immediately appealable.

4. Since the adoption of the Pennsylvania Rules of Appellate Procedure, even an interlocutory order concerning the "jurisdiction" of a court of equity is not immediately appealable as a matter of right. *See* note, Pa.R.A.P. 311.

the public'. We need not review the cases in which the PUC has decided questions on the scope and validity of a taking or delineate its exact power in this regard. What is important in this context is that even assuming the PUC has the power to decide such questions, *the legislature has not made this the exclusive, mandatory procedure for their determination. At most, this statutory remedy is permissive or alternative.* Therefore, appellants' claim that the existence of this power in the PUC means equity has no jurisdiction does not raise a jurisdictional question....

*Redding*, 440 Pa. at 540, 269 A.2d at 684 (emphasis added).

■ We next must consider two cases in our Court which have dealt with this question. In *Philadelphia Electric Co. v. Carr*, 4 Pa. Commonwealth Ct. 571, 580, 287 A.2d 917, 921 (1972), we adopted as our own the language of the trial court which stated, "It is clear ... that equity has at the very least, alternative jurisdiction to determine the scope and validity of a taking and, accordingly, *if the Public Utility Commission does not provide a forum for these determinations, equity will provide a forum.*" (Emphasis added.) In *Wilson v. Western Pennsylvania Water Company*, 60 Pa. Commonwealth Ct. 312, 430 A.2d 1247 (1981), the landowners/condemnees filed an action in equity to challenge the water company's taking of an easement. The trial court dismissed the complaint in equity and the landowners appealed to this Court. We noted that the legislation giving water companies the power to condemn less than a fee did not require any hearings before the PUC. We also stated the obvious that some forum must exist to challenge a taking. As the PUC was not available as a forum, we held that it was error to dismiss the suit in equity.

We are thus left with cases that have the following holdings which seemingly are at odds. When the PUC was mandated to hold a hearing on the question of public necessity prior to the condemnation, it has at times decided questions concerning the validity and the scope of the

taking and those decisions have been affirmed on appeal. *See Redding* (and cases cited therein). Other cases hold that the determination of the PUC is only preliminary and that any questions concerning the scope and validity of the taking are to be decided by subsequent proceedings. *Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. at 339, n. 2, 105 A.2d at 294, n. 2. Those cases do not clearly delineate the applicable subsequent proceedings.

We believe the present case would be controlled by *Wilson* but for one fact. Just as in that case, it is clear that the PUC has no jurisdiction over this matter because the legislation giving WTG the power to condemn does not provide for PUC jurisdiction over *inter* state telecommunications lines. However, in *Wilson*, it was the landowner who was seeking relief from equity with the condemnor attempting to prevent the exercise of equitable jurisdiction. In the present case, the roles are reversed and here it is the condemnor, WTG, who asks that the condemnees be compelled to seek relief in equity while the condemnee/landowners are attempting to litigate the questions concerning the scope and validity of the taking on the petition to approve the bond.

In *Redding,* the landowners were seeking a determination in equity on the validity of the condemnation after the bond had been approved; the condemnor argued that the issue had been waived when the landowners withdrew their objections to the petition seeking approval of the bond. The Supreme Court rejected the condemnor's argument, stating that "[n]owhere in the statute is there any language indicating that the legislature meant [a proceeding seeking approval of a bond] to be the one at which the validity and scope of the taking *has to be determined.*" *Id.* 440 Pa. at 541, 269 A.2d at 684 (emphasis added). That Court thus has made it clear that there is no requirement that condemnees challenge the validity of the taking on a petition to approve a bond. The condemnees here point out that we recently decided questions concerning the validity of a taking on a petition seeking approval of a bond. In *Vernocy v. T.W.*

*Phillips Gas & Oil Co.,* 118 Pa. Commonwealth Ct. 370, 545 A.2d 969 (1988), we did in fact uphold a trial court's decision that the taking was valid; the court entered an order following a hearing which dismissed the landowners' preliminary objections to the petition and thereby approved the bond. WTG aptly points out that in that case the condemnor did not argue that the validity of the taking could not be determined on the petition to approve the bond.

We are thus confronted with an area of the law where certainty has never tread. There are three things of which we are certain. First and foremost, due process requires that the condemnees be permitted to challenge the validity of the taking *in some forum;* in the present, there has not yet been a determination on the merits of the condemnors' claim that the taking was not valid. Second, the condemnees are entitled to a hearing on their claims and they have never been given such a hearing in the present case. Finally, because of the lack of clarity in this area of the law, we will not conclude in this case that the condemnees, proceeding as they did, have waived the opportunity to have the merits of their claims decided. There are cases which have held that in a petition to approve a condemnation bond, the only inquiry is the adequacy and sufficiency of the surety. *Edgewood Water Co. v. Troy Water Co.,* 7 C.C. 476 (1889); *Philadelphia Electric Co. v. Janney,* 31 Del. 412 (1943), and; *Petition of Pennsylvania Telegraph Corp.,* 34 Erie 58 (1951). We agree with WTG that *Vernocy* does not decide the question of the proper forum to challenge the validity of a taking as between equity and the proceedings seeking approval of the bond because that question was never presented in *Vernocy.* As that question is properly before us presently, we hold that the better method in our view for challenging the validity of a taking when PUC involvement is not required by statute is by filing an action in equity.

There are also conflicting cases on the question of whether an order approving a condemnation bond is appealable. In *Seligsohn Appeal,* 410 Pa. 270, 189 A.2d 746

(1963), the Court held that an order approving a bond was interlocutory. However, in *McConnell*, the Court held that *Seligsohn* applied only where the challenge was to the adequacy and sufficiency of the bond; where the challenge went to the right to condemn, that order could be appealed. In the present case, the trial court approved the bond on November 23, 1988. No appeal was ever taken from that order. As one would expect in a case as confusing as this, preliminary objections were filed after the bond was approved and the court scheduled oral argument thereon. When those preliminary objections were denied, the condemnees appealed. We are therefore presented with a situation where the order approving the bond was not appealed yet a subsequent order denying preliminary objections to the petition for approval *after the petition had been approved* was appealed. Under the unique circumstances of this case and because an order merely denying preliminary objections is not appealable, we will quash the present appeal.[5]

Appeal quashed.

## ORDER

NOW, August 1, 1990, the appeal in the above captioned matter is quashed.

---

5. We must at this point make clear that the condemnees will be permitted to file an action in equity and be given a hearing thereon so that the merits of all of their challenges to the validity of this taking can be considered.