## CONDEMNATION BY VALLEY RURAL ELECTRIC COOPERATIVE, INC.

### v.

**Bruce E. SHANHOLTZER and Laura F. Shanholtzer, Roger E. Meinhart and Grace N. Meinhart, Andrew D. Martin and Cynthia D. Martin, Robert L. Shawver and Mildred F. Shawver, Troy D. Henson and Candice P. Hen-**

son, Milan Tomasevich, Jr., and Frei-
da Tomasevich, Patrick H. Hughes
and Mildred Hughes, James Armellei
and Kathy Armellei, David M. Carman
and Drema L. Carman, Greg S. Powell
and Tracy S. Powell, John R. Figard
and Trena L. Figard, Jerome C. Vod-
zak and Geraldine M. Vodzak, Dennis
E. Hamil and Connie L. Hamil

**Appeal of: Roger E. Meinhart
and Grace N. Meinhart.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2009.

Decided Oct. 16, 2009.

Charles B. Swigart, Huntingdon, for appellants.

David A. Ody, Huntingdon, for appellee, Valley Rural Electric Cooperative, Inc.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court is the appeal of Roger E. Meinhart and Grace N. Meinhart (together, Meinharts) from the order of the Court of Common Pleas of Huntingdon County (trial court) that denied Meinharts' preliminary objections to the Declaration of Taking of Valley Rural Electric Cooperative, Inc. (Valley Rural). Meinharts argue that the trial court erred in determining that Valley Rural was not required to apply to the Public Utilities Commission (PUC) for a determination, pursuant to Section 1511(c) of the Business Corpora-

tion Law of 1988, 15 Pa.C.S. § 1511(c), that the service Valley Rural sought to provide through its exercise of eminent domain "is necessary or proper for the service, accommodation, convenience or safety of the public." 15 Pa.C.S. § 1511(c). Alternatively, Meinharts argue that, if the PUC is not required to make such a determination, the matter should be remanded to the trial court for a factual determination as to whether Valley Rural's exercise of eminent domain "is necessary or proper for the service, accommodation, convenience or safety of the public." (Meinharts' Br. at 2.)

Meinharts are the developers of the Longhorn Ranch Subdivision (Longhorn Ranch) in Huntingdon County. Approximately 12 lots in Longhorn Ranch are owned by individuals other than the Meinharts; the Meinharts own the remaining unsold lots. Among these individuals are Bruce E. Shanholtzer and Laura F. Shanholtzer (together, Shanholtzers). The deeds to the lots in Longhorn Ranch contain restrictive covenants which state, *inter alia,* that:

No Right of Ways [sic] for roadways, power lines, pipe lines or for any other purpose may be granted across any lot to the lands of others. The only Right of Ways [sic] that may be granted are for utilities servicing the immediate Longhorn Ranch Subdivision. No lot may be used as a means of access or egress to or from any other real estate.

(Declaration of Taking ¶ 10.)

Valley Rural is an electric cooperative corporation organized pursuant to the Electric Cooperative Corporation Act of 1937[1] and now subject to the Electric Cooperative Law of 1990 (Law).[2] On October

---

1. Act of June 21, 1937, P.L.1969, *as amended, formerly* 15 P.S. §§ 12401–12438, *repealed by* Section 401 of the Act of December 19, 1990, P.L. 834.

2. 15 Pa.C.S. §§ 7301–7359.

8, 2008, Valley Rural filed a Declaration of Taking pursuant to Section 7321(a)(5) of the Law, 15 Pa.C.S. § 7321(a)(5), condemning an easement on Shanholtzers' property to provide for "an additional electric distribution line [which] will extend underground from an existing Valley Rural utility pole located on the condemned easement to an adjacent 20′ private road." (Declaration of Taking ¶ 6.) At argument, the parties did not dispute that the length of the underground line is to be approximately ten feet. The Declaration of Taking states that the purpose of this easement is to "allow[ ] for the installation, repair, replacement, and maintenance of an electric distribution line, and electric utility distribution devices." (Declaration of Taking ¶ 5.)[3] Valley Rural also named the Meinharts as condemnees, along with all other property owners in Longhorn Ranch, condemning "certain rights granted by the restrictive covenants only to the extent that the covenants would serve to prevent Valley Rural from extending electrical service from the condemned easement on the Shanholtzer property to properties located outside of the Longhorn

Ranch Subdivision." (Declaration of Taking ¶ 11.)

The Shanholtzers did not oppose Valley Rural's Declaration of Taking; however, Meinharts filed their Preliminary Objections to Declaration of Taking (Preliminary Objections). In their Preliminary Objections, Meinharts argued that Valley Rural had failed to comply with Section 1511(c) by not obtaining the approval of the PUC for the taking and had failed to allege "that the exercise of eminent domain is necessary or proper for the service, accommodation, convenience or safety of the public." (Preliminary Objections ¶ 2.)

■ The trial court held a hearing at which it heard arguments from Meinharts and from Valley Rural. The trial court held that Valley Rural, as an electric cooperative corporation, is not under the jurisdiction of the PUC and is, therefore, not required to comply with Section 1511(c) or to show that its exercise of eminent domain is necessary for public safety or convenience (a standard which Meinharts derived from Section 1511(c)). The trial court, therefore, overruled Meinharts' Pre-

3. At the hearing before the trial court and in their brief, Meinharts allege that the purpose of this easement is to provide electrical service to Christopher Bowser, an individual owning property located behind Longhorn Ranch and not situated on a public road. (Meinharts' Br. at 3.) Meinharts state that Mr. Bowser sought permission to extend electric lines across Longhorn Ranch, which they denied. (Meinharts' Br. at 3.) Meinharts also allege that:

Some years prior to these events when the Meinharts were developing their subdivision, they met with representatives of [Valley Rural] to arrange for electric service to the lots in the subdivision. Mr. Meinhart made it clear that he and his wife did not want those electric lines to continue through their subdivision in order to serve other properties.

(Meinharts' Br. at 3–4.) Meinharts state that Mr. Bowser initiated a declaratory judgment action against Meinharts, which is still pending. Meinharts allege that the current condemnation by Valley Rural is an attempt to "short-circuit the judicial process." (Meinharts' Br. at 8.)

Meinharts' attorney made similar arguments before the trial court. (Trial Ct. Hr'g Tr. at 12, December 4, 2008.) Valley Rural's counsel made statements during the hearing that appear to corroborate the assertion that the purpose of the easement is to provide electrical service to Mr. Bowser's property. (Trial Ct. Hr'g Tr. at 13.) However, no testimony or evidence was adduced on this issue. Valley Rural states in its brief only that the purpose of the easement is to "provide power to certain properties located outside of the Longhorn Ranch subdivision." (Valley Rural Br. at 10.)

liminary Objections. Meinharts now appeal to this Court.[4]

■ Before this Court, Meinharts argue that Valley Rural is required by Section 1511(c) to apply to the PUC for a determination that the service Valley Rural sought to provide through its exercise of eminent domain power "is necessary or proper for the service, accommodation, convenience or safety of the public." 15 Pa.C.S. § 1511(c). Alternatively, Meinharts argue that the case should be remanded to the trial court for a similar determination.[5]

This Court holds that Valley Rural is not required to apply to the PUC for a determination that its exercise of eminent domain power "is necessary or proper for the service, accommodation, convenience or safety of the public." 15 Pa.C.S. § 1511(c). As an electric cooperative corporation, Valley Rural's authority to exercise eminent domain power stems from Section 7321(a)(5), which states that electric cooperative corporations shall "have and exercise the power of eminent domain for the purpose and in the manner provided by the condemnation laws of this Commonwealth relating to public utility corporations for acquiring private property for public use." 15 Pa.C.S. § 7321(a)(5). The authority for the exercise of eminent domain power by public utility corporations is found at Section 1511. Meinharts, therefore, argue that electric cooperative corporations should be subject to *all* of the provisions of Section 1511, including subsection (c), which states that the power of eminent domain:

may be exercised to condemn property outside the limits of any street, highway, water or other public way or place for the purpose of erecting poles or running wires or other aerial electric, intrastate aerial telephone or intrastate aerial telegraph facilities only after the [PUC], upon application of the public utility corporation, has found and determined, after notice and opportunity for hearing, that the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public.

15 Pa.C.S. § 1511(c). We do not agree that the PUC has the authority to make such a determination with respect to an electric cooperative corporation.

■ Section 7334 of the Law states that "all electric cooperative corporations subject to this chapter shall be exempt in any and all respects from the jurisdiction and control of the Pennsylvania Public Utility Commission." 15 Pa.C.S. § 7334. Moreover, the PUC only has that authority which the Legislature has delegated to it by statute. *City of Philadelphia v. Philadelphia Electric Company*, 504 Pa. 312, 318, 473 A.2d 997, 1000 (1984). Such a grant of authority must be clear. *Id.* There is no clear statutory grant of authority for the PUC to make a determination as to the necessity or propriety of service furnished by an electric cooperative corporation. Therefore, even if Valley Rural were to seek such a determination, as Meinharts assert that it must, the PUC would lack the statutory authority to grant it. This Court holds that Section 1511(c) is

4. "In eminent domain cases, this Court's scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law." *York City Redevelopment Authority v. Ohio Blenders, Inc.*, 956 A.2d 1052, 1057 n. 4 (Pa.Cmwlth. 2008).

5. In deciding this case, this Court also considered the amicus curiae brief of the Pennsylvania Rural Electric Association (PREA).

not applicable to electric cooperative corporations.

▇ Next, we address Meinharts' alternative argument that, because Section 7321(a)(5) states that the exercise of eminent domain by an electric cooperative corporation shall be for the purpose relating to the exercise of eminent domain by public utilities, Valley Rural should be required to make a factual showing before the trial court that its exercise of eminent domain in this case "is necessary or proper for the service, accommodation, convenience or safety of the public" as required by Section 1511(c). 15 Pa.C.S. § 1511(c). Meinharts argue that, without such a showing, their due process rights will be violated, and electric cooperative corporations will be able to exercise the power of eminent domain without any limitation. We do not agree.

The fundamental error of Meinharts' argument is their conflation of the purpose of a public utility corporation and the purpose of an electric cooperative corporation. The purpose of an electric cooperative corporation is not to provide electric service to the general public, but to engage:

in rural electrification by any one or more of the following methods:

(1) Furnishing of electric energy to persons in rural areas who are not receiving central station service.

(2) Assisting in the wiring of the premises of persons in rural areas or the acquisition, supply or installation of electrical or plumbing equipment therein.

(3) Furnishing of electric energy, wiring facilities, electrical or plumbing equipment or services to any other corporation or to the members thereof.

15 Pa.C.S. § 7305. Section 7321(a)(5) provides that electric cooperative corporations may exercise the power of eminent domain: 1) for the purpose and; 2) in the manner relating to public utility corporations. One purpose for which a public utility corporation may exercise the power of eminent domain is for the transmission of electricity for the public. 15 Pa.C.S. § 1511(a)(2). But, where a public utility corporation exists to provide utility service to the *general public*, electric cooperative corporations exist to provide electric service to their *members*. Therefore, a legitimate purpose for the exercise of the eminent domain power by an electric cooperative corporation is to provide electric service to its members.[6],[7] While this pur-

---

6. Section 7324 of the Law, 15 Pa.C.S. § 7324, sets forth who may be members of an electric cooperative corporation:

> All persons in rural areas proposed to be served by an electric cooperative corporation, who are not receiving central station service, shall be eligible for membership in the corporation. No person other than the incorporators shall be, become or remain a member of the corporation unless the person uses or agrees to use electric energy or, as the case may be, the facilities, supplies, equipment and services furnished by the corporation. A corporation existing under this chapter may become a member of another such corporation and may avail itself fully of the facilities and services thereof. 15 Pa.C.S. § 7324.

7. The Fifth Amendment of the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, Article 1, Section 10 of the Pennsylvania Constitution states that private property shall not "be taken or applied to public use, without authority of law and without just compensation first being made or secured." Pa. Const. art. I, § 10. These provisions have been interpreted as prohibiting the use of the eminent domain power to take private property for a private purpose. *See, e.g., In re Opening a Private Road ex. rel. O'Reilly*, 954 A.2d 57, 60 (Pa.Cmwlth.2008) (analyzing challenge to opening of a private road based on the premise that such a taking would be a violation of the Fifth Amendment and Section 10). Meinharts' constitutional arguments in

pose is not identical to the purpose for which public utilities exercise the power of eminent domain, it does "relat[e] to" such a purpose. 15 Pa.C.S. § 7321(a)(5). With regard to the manner of exercising the power of eminent domain, Section 1511(g) provides that a public utility corporation may exercise the power of eminent domain by proceeding, as Valley Rural has, in accordance with the Eminent Domain Code (Code), 26 Pa.C.S. §§ 101—1106.

Meinharts rely upon *Appeal of Swidzinski*, 134 Pa.Cmwlth. 330, 579 A.2d 1352, 1357 (1990), for the proposition that condemnees, like themselves, must have some mechanism by which they can challenge the validity of a proposed taking. Although *Swidzinski* does stand for this proposition, it is limited to its very unique facts. *Swidzinski* dealt, in part, with the issue of under what circumstances and by what mechanism condemnees could challenge the validity of a taking where a public utility, because of the special circumstances involved, was not required to seek a determination of public necessity from the PUC. Because of the particularly unusual procedural posture of that case, the condemnees were unable to challenge any aspect of the taking. Id. at 1357. Therefore, the condemnees alleged a denial of due process. Relying in part on *Redding v. Atlantic City Electric Company et. al.*, 440 Pa. 533, 269 A.2d 680 (1970), and *McConnell Appeal*, 428 Pa. 270, 236 A.2d 796 (1968),[8] this Court determined

this case address only their due process rights. Meinharts do not advance the argument that, if this Court rejects their interpretation of Section 1511(c) and the Law, then the taking of private property for a private purpose would result. As noted above, electric cooperative corporations exercise the power of eminent domain not to provide electricity to the *general* public, but to provide electricity to those members of the public who are not served by public electric utilities. This does not mean, however, that takings by electric cooperative corporations are for private purposes. A taking may be for a public purpose, even if the benefit of the taking inures more greatly to an individual than to the general public. For example, in *In re Opening a Private Road*, this Court stated:

> [A] public purpose is served by allowing the laying out of roads over the land of another. Although the private property owner who petitioned for the private road certainly gains from the opening of the road, the public gains because otherwise inaccessible swaths of land in Pennsylvania would remain fallow and unproductive . . . making that land virtually worthless and not contributing to commerce or the tax base of this Commonwealth.

*In re Opening a Private Road*, 954 A.2d at 72. Similarly, the purpose of the Law is to furnish "electrical energy to persons in rural areas who are not receiving central station service." 15 Pa.C.S. § 7305(1). Just as private roads are necessary to make otherwise land-

locked land usable and productive to the public as a whole, the provision of service by electric cooperative corporations is necessary to make inhabitable land that would otherwise be uninhabitable, by modern standards, and therefore valuable and productive to the Commonwealth as a whole. Therefore, although electric cooperative corporations are not required to show that their exercises of eminent domain are for the purpose of providing service to the general public, if such takings are necessary to provide electrical service to members of the public who would otherwise be unserved by public electric utilities, they are still for a public purpose.

**8.** It is worth noting that, at the time *Redding* and *McConnell* were decided, Section 901 of the Eminent Domain Code of 1964, Act of June 22, 1964, P.L. 84, *formerly*, 26 P.S. § 1-901, *repealed by* Section 302(a) of the Act of December 21, 1988, P.L. 1444, provided that the Eminent Domain Code of 1964 did not apply to the procedure for the taking of easements for the furnishing of public utilities. It is not clear whether this Court, in *Swidzinski*, considered that this provision had been repealed and that no similar provision now appears in the Code. Although this Court did not address the repeal of Section 901, it did note that the events giving rise to *Swidzinski* took place prior to the effective date of the Act of December 21, 1988, P.L. 1444. *Swidzinski*, 579 A.2d at 1353 n. 1.

that, where the PUC had not determined the validity of the proposed taking by a public utility corporation, an action in equity, and not preliminary objections to the declaration of taking in that case, was the proper method to challenge the validity of the taking. *Swidzinski*, 579 A.2d at 1357. Because the unusual circumstances present in *Swidzinski* do not exist here, *Swidzinski* is inapplicable. Moreover, those circumstances are unlikely to occur again due to the amendment of the Code in 1988.

As noted above, the manner in which electric cooperative corporations are to exercise the power of eminent domain is through the provisions of the Code. As Valley Rural points out, Section 306(a)(3)(i) of the Code provides that a condemnee may file preliminary objections to a taking in order to challenge "[t]he power or right of the condemnor to appropriate the condemned property." 26 Pa.C.S. § 306(a)(3)(i). If Meinharts believed that Valley Rural's exercise of the power of eminent domain was without authority or for an improper purpose, for example, if that exercise was not for the purpose of providing electricity to a person eligible to be a member of Valley Rural, then this should have been raised as a preliminary objection to the Declaration of Taking so that the trial court could have taken evidence on this issue. Instead, Meinharts averred that Valley Rural had "not alleged in its Declaration of Taking that the exercise of eminent domain is necessary or proper for the service, accommodation, convenience or safety of the public." (Preliminary Objections ¶ 2.) As discussed above, Valley Rural is not required to allege that its exercise of eminent domain is for the purpose of public service, convenience or accommodation, but must allege that its exercise of eminent domain is necessary to serve one of the purposes enumerated in Section 7305. One of these purposes is to provide electricity "to per-

sons in rural areas who are not receiving central station service" (i.e., a member of the public who otherwise would not be able to receive electric service). 15 Pa.C.S. § 7305(1). Meinharts acknowledge that the purpose of Valley Rural's exercise of eminent domain is to provide electrical service to an individual owning property bordering Longhorn Ranch who is not receiving electricity from a public utility. (Meinharts' Br. at 3–4.) We, therefore, affirm the order of the trial court.

### *ORDER*

**NOW,** October 16, 2009, the order of the Court of Common Pleas of Huntingdon County in the above-captioned matter is hereby **AFFIRMED.**