**In Re: Condemnation by PPL ELECTRIC UTILITIES CORPORATION OF REAL ESTATE SITUATE IN SCHUYLKILL COUNTY, Pennsylvania, being the Property of WMPI Land Corp.**

**Appeal of WMPI Land Corp.**

Commonwealth Court of Pennsylvania.

Argued March 11, 2013.

Decided May 8, 2013.

Stephen T. Carpenito, Pottsville, for appellant.

---

Malcolm J. Gross, Allentown, for appellee.

BEFORE: LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

WMPI Land Corp. (WMPI) appeals from the Order of the Court of Common Pleas of Schuylkill County (trial court) overruling and dismissing WMPI's Preliminary Objection to the Notice of Filing of Declaration of Condemnation filed by PPL Electric Utilities Corporation (PPL) and the Declaration of Taking (Declaration) condemning WMPI's land for a perpetual easement and right-of-way to construct, operate, and maintain lines and facilities for the distribution of electricity. On appeal, WMPI argues that the trial court erred by dismissing its Preliminary Objection because PPL was required to comply with the procedural requirements set forth in Section 1511 of the Associations Code[1] by seeking approval from the Public Utility Commission (PUC) prior to condemning WMPI's land for the perpetual easement and right-of-way.

WMPI is a Pennsylvania corporation engaged in leasing land for coal mining operations, and the owner of a certain tract of land in the Borough of Gilberton, Schuylkill County, Pennsylvania. WMPI acknowledges that electric distribution facilities consisting of poles and an overhead power line presently exist upon this tract of land that were previously installed by PPL pursuant to an expired right-of-way agreement dated July 9, 1982 (Agreement) between WMPI's predecessor in title and Pennsylvania Power & Light, now PPL.

On January 24, 2011, pursuant to Section 1511(a)(3) of the Associations Code, PPL filed its Declaration. The Declaration provides that PPL is taking the following interest in WMPI's property:

1. 15 Pa.C.S. § 1511. Section 1511 of the Associations Code provides, in pertinent part, as follows:

(a) General Rule.—A public utility corporation shall, in addition to any other power of eminent domain conferred by any other statute, have the right to take, occupy and condemn property for one or more of the following principal purposes and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes:

. . .

(3) The production, generation, manufacture, transmission, storage, distribution or furnishing of natural or artificial gas, electricity, steam, air conditioning or refrigerating service or any combination thereof to or for the public.

. . .

(c) Public Utility Commission approval.— The powers conferred by subsection (a) may be exercised to condemn property outside the limits of any street, highway, water or other public way or place for the purpose of erecting poles or running wires or other aerial electric, intrastate aerial telephone or intrastate aerial telegraph facilities only after the Pennsylvania Public Utility Commission, upon application of the public utility corporation, has found and determined, after notice and opportunity for hearing, that the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public. The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held under this subsection, and no court shall entertain any proceeding questioning the jurisdiction of the commission under this subsection. A final order of the commission approving or denying an application under this subsection, including an order involving a question of jurisdiction under this subsection, may be made the subject of any appeal in the manner provided or prescribed by law. *Id.*

[a] perpetual easement and right-of-way to construct, operate and maintain and from time to time to reconstruct overhead and underground electric distribution lines, including, but not limited to, such poles, towers, guys, cables, wires, fiber optics, fixtures and apparatus above and below the ground (hereinafter referred to as "Electric Facilities") that may from time to time be necessary for the convenient transaction of the business of the Condemnor ... also the right to remove any buildings or structures from the property ... it being understood that Condemnor ... shall not be limited in its ... enjoyment of the aforesaid rights to such Electric Facilities as may be now constructed on the property, but shall have, at all times in the future, the right to construct, operate and maintain, and from time to time reconstruct additional Electric Facilities of any type necessary for the convenient transaction of the business of Condemnor upon, across, under, along or within the property.

(Declaration at ¶ 8, R.R. at 13–14.)

On February 17, 2011, WMPI filed Preliminary Objections [2] stating that: (1) PPL did not comply with the procedural requirements set forth in Section 1511 of the Associations Code by seeking approval from the PUC prior to condemning WMPI's land and PPL's failure to do so nullifies the Declaration and requires its dismissal; (2) the Declaration lacks specificity about the property to be condemned; and (3) PPL failed to name an indispensable party. (Preliminary Objections ¶¶ 6–25, R.R. at 33–35.) Stating that there was an issue of fact regarding whether the Declaration concerned existing or new electrical facilities, and that because the latter required PUC approval, the trial court ordered depositions to take evidence on this issue.[3] (Trial Ct. Order, April 1, 2011, at 1–2.)

In the depositions, John J. Kelhart, PPL's Supervisor of Land Acquisition, testified that he reviewed the plans that accompanied the Declaration, that all of the facilities that are the subject of the Declaration are existing distribution facilities and have been for many years, and acknowledged that these facilities consist of poles and overhead distribution lines. (Kelhart's Dep., May 25, 2011, at 6–8, 17–18, 40, R.R. at 70–72, 75.) Daniel Benedict, PPL's Distribution Design Supervisor, testified that the existing facilities on WMPI's land are distribution facilities, that PPL does not seek permission from the PUC to move or construct distribution lines, and PPL has no present plans for construction of new facilities. However, Mr. Benedict stated that "[a]ny facilities that are currently existing could need to be relocated in some form, which would basically produce new facilities in place" and acknowledged that "electric facilities can mean a whole host of different things for PPL" other than the electrical facilities presently existing on WMPI's land. (Benedict's Dep. at 19–21, R.R. at 106–08.) Mr. Benedict admitted that the Declaration authorizes PPL to construct other facilities, such as transmission lines, substations, and even fiber optics which do not relate to electricity, but to communications. (Benedict's Dep. at 16–17, R.R. at

---

2. In eminent domain matters, preliminary objections are the exclusive method of challenging the power to condemn. Section 306(a)(3)(i) of the Eminent Domain Code, 26 Pa.C.S. § 306(a)(3)(i).

3. Where preliminary objections in eminent domain matters raise issues of fact, the trial court is required to take evidence by depositions or otherwise. Section 306(f)(2) of the Eminent Domain Code, 26 Pa.C.S. § 306(f)(2); *Appeal of McKonly*, 152 Pa. Cmwlth. 211, 618 A.2d 1169, 1171 (1992).

103–04.) Mark K. Wolfe, Controller of WMPI, acknowledged that he had no awareness, notice, or basis to conclude that PPL presently seeks to erect any additional facilities. (Wolfe's Dep. at 17, R.R. at 135.)

On January 17, 2012, during oral argument on the Preliminary Objections, WMPI withdrew all except one objection: that PPL did not comply with the procedural requirements set forth in Section 1511(c) of the Associations Code. (Preliminary Objections ¶ 7, R.R. at 33; Trial Ct. Op. at 1.) After a stay requested by the parties and the unsuccessful attempt to settle this matter, the trial court issued an Opinion and Order overruling WMPI's Preliminary Objection on June 27, 2012. In its Opinion, the trial court concluded that PPL was "not taking the land in this case for the purpose of *erecting* or *putting in* place new facilities," but rather for the purpose of operating and maintaining existing lines and facilities for the distribution, not transmission, of electricity.[4] (Trial Ct. Op. at 4.) (Emphasis in original.) The trial court stated that compliance with Section 1511(c) was not required in this case based upon the consistent representations of PPL, and a "reasonable interpretation of the language of the Declaration." (Trial Ct. Op. at 4.) This appeal followed.[5]

On appeal, WMPI argues that Section 1511(c) requires the PUC's prior approval before PPL can condemn WMPI's land and PPL did not seek that approval here. WMPI maintains that the trial court's reliance upon PPL's present inten-

tions to condemn a perpetual easement and right-of-way on WMPI's land only to maintain existing facilities is erroneous or an abuse of discretion because it is the Declaration, not intentions, that governs the terms of the condemnation. WMPI maintains that the language of the Declaration does not limit PPL to existing facilities—described by WMPI as presently a single wire and some poles—but gives PPL much broader authority, such as "at all times in the future, the right to construct, operate and maintain ... additional Electric Facilities of any type," as "from time to time [may] be necessary for the convenient transaction of the business of [PPL]," including the right to erect new facilities, including fiber optic lines, and "the right to remove any buildings or structures from the property." (Declaration ¶ 8, R.R. at 13–14.) WMPI argues that permitting this condemnation without PUC approval violates the public policy that is expressed via the protections afforded by Section 1511(c), contending that a different type of facility could be built on WMPI's property without any opportunity for PUC consideration of whether this would be in the public interest. Moreover, contrary to PPL's position that compliance with Section 1511(c) is not required because it does not intend to construct new facilities, WMPI contends that nothing in Section 1511(c) requires that the facilities be new in order to trigger PUC review.

PPL counters that the PUC's regulations and interim guidelines governing transmission and high voltage lines, specif-

---

4.  PPL notes that "[e]lectric service has three parts[:] generation, transmission and distribution." (PPL's Br. at 6.)

5.  In eminent domain cases, this Court reviews whether the trial court committed an abuse of discretion or an error of law. *Condemnation by Valley Rural Electric Coopera-*

*tive, Inc. v. Shanholtzer,* 982 A.2d 566, 570 n. 4 (Pa.Cmwlth.2009). "When an appeal presents a question of law, such as statutory interpretation, our scope of review is plenary." *In Re Condemnation of Springboro Area Water Authority of Property of Gillette,* 898 A.2d 6, 8 n. 3 (Pa.Cmwlth.2006).

ically 52 Pa.Code § 57.71 [6] and 52 Pa.Code § 69.3103,[7] support PPL's conclusion that the PUC's approval is not required when a public utility seeks to condemn land when merely existing distribution facilities are involved. Because the PUC's regulations focus only on the review and approval of eminent domain applications associated with high voltage transmission facilities and high voltage siting applications, PPL contends that this is evidence that the PUC interprets Section 1511(c) not to apply when only distribution facilities are involved.

This Court has stated that "[w]hen the legislature confers the right to exercise eminent domain power, that power is limited to that which has been expressly stated" and "the legislature's grant of power to condemn property must be strictly construed." *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d 1288, 1292 (Pa.Cmwlth.2011) (citations omitted).

> [W]e must emphasize that the exercise of eminent domain authority is in derogation of a private citizen's right to hold property; hence, the authority to condemn property in eminent domain must be strictly construed. Eminent domain powers arise only when the legislature "points out the occasions, the modes and the agencies for its exercise.... While the right to exercise the power may be delegated, the body to which the power is entrusted has no authority beyond that legislatively granted."

*Olson v. Whitpain Township*, 141 Pa. Cmwlth. 270, 595 A.2d 706, 708 (1991) (quoting *In re Legislative Route 1018, Section 4, Lower Chichester Township, Delaware County*, 422 Pa. 594, 596–98, 222 A.2d 906, 908–09 (1966)) (internal citation omitted).

In applying these principles, we observe that Section 1511(c) explicitly applies to condemnations "for the purpose of erecting poles or running wires or other aerial electric ... telephone or intrastate aerial telegraph facilities only after the [PUC] ... has found and determined ... that the service ... is necessary or proper." 15 Pa.C.S. § 1511(c). Although PPL argues that its present intentions are merely to maintain existing facilities, and not to run new wires or put up new poles, the Declaration is not so limited, but authorizes PPL to do more: to construct, operate, and "reconstruct overhead and underground distribution lines, including, but not limited to, such poles, towers, guys, cables, wires, fiber optics, fixtures and apparatus above and below the ground." (Declaration ¶ 8, R.R. at 13.) The Declaration also grants PPL the right "to remove any buildings or structures from the property" and states that PPL

> shall not be limited in its ... enjoyment of the aforesaid rights to such Electric Facilities as may be now constructed on the property, but shall have, at all times in the future, the right to construct, operate and maintain, and from time to time reconstruct additional Electric Facilities of any type necessary for the

---

**6.** Section 57.71 provides that a public utility must first obtain PUC approval for the authorization and location of high voltage transmission lines before the utility may commence construction of the high voltage line or any portion thereof. 52 Pa.Code § 57.71.

**7.** Section 69.3103, an interim guideline, provides the process by which the public utility

shall obtain PUC approval for transmission siting and provides that information to be submitted should be consistent with the filing requirements for the exercise of eminent domain powers under Section 302(b)(5) of the Eminent Domain Code, 26 Pa.C.S. § 302(b)(5) (relating to declaration of taking). 52 Pa.Code § 69.3103.

convenient transaction of business of Condemnor upon, across, under, along or within the property.

(Declaration ¶ 8, R.R. at 14.) Thus, the Declaration filed by PPL is broad and does not limit PPL to its presently stated intentions. In addition, that the PUC has promulgated regulations and interim guidelines for approvals of high voltage facilities does not provide guidance regarding the PUC's approach to eminent domain applications for distribution facilities.

Because we must strictly construe eminent domain statutes pursuant to *Township of Millcreek*, 25 A.3d at 1292, and *Olson*, 595 A.2d at 708, and because the Declaration authorizes actions by PPL that appear to be encompassed within Section 1511(c), we are constrained to conclude that PPL must comply with Section 1511(c) before condemning WMPI's land for a perpetual easement and right-of-way.

Accordingly, we must reverse the trial court's Order.

### ORDER

**NOW**, May 8, 2013, the Order of the Court of Common Pleas of Schuylkill County, dated June 27, 2012, at No. S–162–11, is hereby **REVERSED**.