# Philadelphia Clay Company *v.* York Clay Company, Appellant.

*Constitutional law—Right of eminent domain—Public or private use—Tramways—Private roads—Mining operations—Act of May 5, 1911, P. L. 167.*

1. Eminent domain is the sovereign power vested in the Commonwealth to take private property for public use. It is a reservation in the grant of land by the State to a private owner and is paramount to the right of ownership in the individual. The power is not necessarily created either by Constitution or statute, but is an inherent attribute of sovereignty itself.

2. Under the right of eminent domain private property can only be taken for a public use, and it is not within the power of the legislature to invest either an individual or a corporation with the right to take the property of a private owner for the private

use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation.

3. The Act of May 5, 1911, P. L. 167, conferring upon an individual, firm or corporation entitled to the use of a private road the right to construct a tramway on it for certain purposes, does not declare the purpose for which the tramway is to be constructed a public use, and the question is one to be decided by the courts upon its merits under the facts and the law.

4. The Act of May 5, 1911, P. L. 167, which provides that in certain cases relating to mining operations, tramways and other devices for moving products may be placed upon private roads laid out under the authority of the Acts of April 4, 1901, P. L. 65, and May 17, 1901, P. L. 259, does not authorize the construction upon a private road a tramway by a private business corporation having no authority to build and operate tramways to serve the public, where it appears that the public at large could not possibly make use of the tramway for the purpose of operating cars upon it, nor could the public demand as a matter of right that the owner should become a common carrier in a sense of being able to accept such freight as might be offered for transportation.

5. In such a case the fact that the tramway is to be constructed upon a private road does not alter the situation of the parties. The legal status is just the same as if the parties seeking to construct the tramway were undertaking in the first instance to condemn the land of a private owner for the purpose of constructing and operating a tramway over it, because the additional servitude upon the land amounts to a taking in contemplation of law.

*Equity—Jurisdiction—Condemnation proceedings—Act of May 5, 1911, P. L. 167—Injunction.*

6. In a proceeding in equity by a property owner to enjoin the construction of a tramway along a private road upon his property under the Act of May 5, 1911, P. L. 167, the property owner has a standing to inquire by what right his property is being taken or injured, and he has the right to proceed in a court of equity to restrain the unlawful taking.

Argued April 28, 1911. Appeal, No. 209, Jan. T., 1912, by defendant, from decree of C. P. Cumberland Co., June T., 1911, No. 7, In Equity, granting injunction in case of Philadelphia Clay Company v. York Clay Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for a restraining injunction. Before SADLER, P. J.

The opinion of the Supreme Court states the case.

The court by a preliminary decree, subsequently made final, restrained the defendants from entering upon the property of the complainant where its private road crosses the same for the purpose of constructing or laying a tramway thereon.

*Error assigned,* among others, was the decree of the court.

*J. W. Wetzel,* with him *Conrad Hambleton,* for appellant, cited: Pocopson Road, 16 Pa. 15; Dickinson Township Road, 23 Pa. Superior Ct. 34; Palairet's App., 67 Pa. 479; Waddell's App., 84 Pa. 90; Harvey v. Thomas, 10 Watts 63; Harvey v. Lloyd, 3 Pa. 331; Hays v. Risher, 32 Pa. 169; Brown v. Corey, 43 Pa. 495; Jacobs v. Water Supply Co., 220 Pa. 388; Neeld's Road, 1 Pa. 353; Keeling's Road, 59 Pa. 358.

*S. B. Sadler,* for appellee.—Under the very terms of the Act of May 5, 1911, P. L. 167, the tramway to be constructed thereon was exclusively for a private use which would constitute an additional servitude upon the land occupied: Keeling's Road, 59 Pa. 358; Proctor v. Campbell, 6 Pa. C. C. R. 531; Penna. R. R. Co. v. Montgomery County Passenger Ry. Co., 167 Pa. 62.

The legislative declaration that a use is a public one does not conclusively determine whether the purpose so declared is a public one. To constitute a public use it is essential that the general public be to some extent entitled to a fixed and definite right to participate in the use; not as a mere matter of favor, nor by permission of the owner, but as a matter of right: Jacobs v. Water Supply Co., 220 Pa. 388; Philadelphia, Morton & Swarthmore St. Railway Co.'s Petition, 203 Pa. 362; State v. Bancroft, 38 L. R. A. (N. S.) 526.

A public use within the constitutional meaning, and which will justify the grant of the power of eminent domain to subserve, means such a use as may be taken advantage of by the public at large in the community: Jacobs v. Clearview Water Supply Co., 220 Pa. 388; Farmers' Market Co. v. Philadelphia & Reading Terminal Co., 10 Pa. C. C. R. 25; Arnsperger v. Crawford, 101 Md. 247; Shasta Power Company v. Walker, 149 Fed. Repr. 568; Olmsted v. Morris Aqueduct, 47 N. J. L. 311.

OPINION BY MR. JUSTICE ELKIN, May 28, 1913:

The Act of May 5, 1911, P. L. 167, provides that in certain cases relating to mining operations, tramways and other devices for moving products may be placed upon private roads laid out under the authority of the Acts of April 4, 1901, P. L. 65, and May 17, 1901, P. L. 259. The Act of 1911 in plain language gave to persons or corporations entitled to the use of a private road the right to construct and operate a tramway or other device upon such private road for the purpose of conveying materials mined from the lands of a private owner, or which amounts to the same thing, the right of a mining company to construct a tramway or other device upon a private road for the purpose of conveying materials mined from lands owned or leased for mining purposes. The question for decision here is whether the legislature had the power to invest a mining company with the right of eminent domain for such a purpose, or, differently expressed, whether the land of a private owner can be condemned and taken from him for such use. It is settled law in Pennsylvania that private property cannot be taken for a private use under the power of eminent domain. Even the legislature is without power to authorize the taking of private property for a private use, and when it attempts to do so such acts will be declared to be inoperative and of no effect for the purpose intended. The power of eminent do-

main is an attribute of sovereignty, and every private owner holds his property subject to the right of the sovercign to take the same, or such part of it as may be required to serve the public use. It is true that the power can only be exercised for the purposes and in the manner authorized by the legislature, but the power of the legislature to invest individuals or corporations with the right of eminent domain has its limitations, the most important of which is that the property taken must be for a public use. This principle is recognized in the Constitutions of 1776, 1790, 1838 and 1874. In Article XVI, Section 7, of the present Constitution, it is provided: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury or destruction." While the Constitution does not in express terms deny the right to take property for a private use under the power of eminent domain, the plain implication is that the power can only be exercised when the property taken is for a public use. In the section just quoted there is the provision that persons or corporations "invested with the privilege of taking private property for public use" shall make just compensation to the private owner for the property so taken. While the power of the legislature to invest individuals or corporations with the right to take private property for a public use is clearly recognized by the Constitution, there is not a suggestion anywhere that private property may be taken for a private use. It has been uniformly held by the courts in our own State as well as in other jurisdictions that under the right of eminent domain private property can only be taken for a public use, and that it is not within the power of the legislature to invest either an individual or a corporation with the

right to take the property of a private owner for the private use of some other individual or corporation even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation. The underlying principle is that the owner of property has the right to the uninterrupted use and enjoyment of it against all the world, subject, however, to the sovereign right of the State to take so much of it as may be necessary to serve the various public uses to which it may be properly subjected. Eminent domain is the sovereign power vested in the Commonwealth to take private property for public use. It is a reservation in the grant of land by the State to a private owner and is paramount to the right of ownership in the individual. The power is not necessarily created either by Constitution or statute, but is an inherent attribute of sovereignty itself: Jacobs v. Water Supply Co., 220 Pa. 388. The exercise of the power is regulated by constitutional and statutory law, but the power itself is not created by the Constitution or by statute. All presumptions are in favor of the statutory declaration that the use is a public one, but such presumptions do not conclusively determine whether the purpose so declared is a public use. In the final analysis this question is for the courts when a case is presented and such facts are established as to give the proper information upon which to base a correct conclusion. One question for decision in the present case is whether the court has jurisdiction to hear and determine the matters in dispute between the parties, including the character of the use to which the private road was subjected by the construction of a tramway upon it. The building of a tramway upon a private road laid out under statutory authority imposes an additional servitude upon the land over which it passes, and this is a use not contemplated when the private road was originally laid out. A land owner whose property is affected by the additional servitude has such an interest as to give him standing

to inquire by what right his property is being taken or injured. In the present case appellee is standing upon this right in the assertion of which the present bill was filed. If its property is being invaded without authority of law, or if the purpose for which the additional servitude is imposed upon its land is a private use, there can be no doubt as to the right of appellee to proceed in a court of equity to restrain the unlawful taking. This is not an open question in our State, and the jurisdiction of a court of equity to restrain a threatened unlawful taking of this character has never been seriously questioned. It all depends upon the right of the condemning company to appropriate the land of a private owner. If it has no such lawful right, it is a trespasser, and the land owner whose property is wrongfully taken or injured may ask the intervention of a court of equity to restrain the unlawful invasion. The Act of 1911 authorizes the construction of a tramway to convey the products and materials of a mining company over a private road. It also provides a method for ascertaining the amount of damages sustained by a land owner over whose lands the tramway passes. We are not prepared to say that the method provided for the ascertainment of damages is so objectionable as to require the court to declare the act unconstitutional on this ground. The main question is whether the purpose for which the tramway is to be constructed is a public or a private use. If it is a public use, the legislature had the power to invest the appellant company with the right of eminent domain; if, on the other hand, it is a private use, the legislature had no such power. The narrow question is whether the purpose for which the tramway is to be constructed is a public or private use and this necessarily depends upon the facts. Can there be any doubt as to the character of the use, if the case be considered upon the real facts disclosed by the testimony. The tramway is to be constructed and operated by the appellant at its own ex-

pense and for its own purposes. It is not a public service corporation and it has no grant of power under its charter to engage in the business of transporting clay and other materials for the public. It was chartered as a private business corporation and primarily must be so regarded. We find nothing in its charter, nor in the statutes under which it was incorporated, that contains even a suggestion of its right to build and operate tramways to serve the public. It may have this right as an incident to its business, but if so, it is the right of a private corporation for its private purposes. It must be conceded that the Act of 1911 does confer upon an individual, firm or corporation entitled to the use of a private road, the right to construct a tramway upon it for certain purposes, but there is not a word in the act to indicate that the legislature intended to declare the purpose for which the tramway is to be constructed a public use. The act is silent as to the character of the use contemplated, so that in the consideration of this question we are not confronted with a legislative declaration that the purpose for which the tramway was to be constructed and operated is a public use. The legislature did not so declare and hence we are at liberty to consider this question upon its merits under the facts and the law. When so considered we see no escape from the conclusion that the purpose of constructing and operating the tramway is a purely private use intended as a benefit to a private business corporation.

The fact that the tramway is to be constructed upon a private road does not alter the situation of the parties. When the private road was originally laid out and damages were assessed no such use was contemplated. That this is so is clearly shown by the passage of the Act of 1911, in the absence of which no such right would be asserted. The legal status of the parties is just the same as if appellant were undertaking in the first instance to condemn the land of appellee for the pur-

pose of constructing and operating a tramway over it, because the additional servitude upon the land amounts to a taking in contemplation of law. The case, therefore, may be considered without reference to the rights of the public and the private corporations in the use of the private road. In this connection it is urged by appellant that the exercise of the right of eminent domain for laying out private roads has been sustained by our courts in several cases, and this is true: Pocopson Road, 16 Pa. 15; Palairet's App., 67 Pa. 479. The right to take private property under the power of eminent domain for the laying out of private roads has been sustained on the ground that even private roads are subject to use by the public in passing to and from land connected with public highways, and as a result the public have a use in the private way, and upon this ground alone has the right to take the property of a private owner been sustained in this class of cases. This is settled law in our State and there is no disposition to question the soundness of the doctrine declared in the private road cases. But it should not be overlooked that when a private road is laid out, it is not only for the accommodation of the particular individual or individuals especially benefited, but the public at large have free access to it for every purpose of a public highway, and in this sense it serves a public use. The use, however, is such as the public may have in the ordinary use of a public highway. Generally speaking, public highways cannot be devoted to the special use even of a public service corporation without the consent of the municipal authorities, and the payment of damages to abutting land owners, but a private business corporation has no right to permanently take any part of a public highway for a special use. We can see no reason why a distinction should be made in this respect between a public highway and a private road which must be considered as set apart for a public use when the right of eminent domain is asserted. Pub-

lic service corporations are created to serve the public, and in order to carry out the corporate purposes of such corporations, the legislature may very properly delegate the power of eminent domain, but a private business corporation has no public use to serve, and, hence, cannot properly be invested with the privilege of taking private property for private uses. The legislature cannot authorize the taking of private property for any other than a public use: Waddell's App., 84 Pa. 90.

Again, it is urged, that the present case comes within the purview of the lateral railroad acts in which this court has sustained the right to condemn private property under the power of eminent domain. While there may be some confusion in our cases relating to lateral railroads, the true reason for sustaining these acts in so far as the right to condemn private property is involved, is that the public had the right to use them for every purpose for which they were authorized to be constructed. On no other ground could these acts have been sustained on principle. When it is understood that the public have the right to use lateral railroads, the cases relating to those acts form no exception to the general rule hereinbefore discussed.

To hold in the present case that the public have the right to use a tramway constructed by a private business corporation to convey clays and materials mined on its own property would be to disregard the plain facts disclosed by this record. The public at large could not possibly make use of the tramway for the purpose of operating cars upon it, nor could the public demand as a matter of right that a private business corporation should become a common carrier in the sense of being compelled to accept such freight as might be offered for transportation. The appellant is not a common carrier and does not possess the charter powers of a public service corporation. In no proper legal sense can it be regarded as being engaged in any kind of

business in which service to the public is required. When it acquires or takes property it is for its own business purposes and not for a public use. It is not necessary for the purposes of this case to finally decide whether the Act of 1911 is unconstitutional as a whole and we do not do so. What we do decide is that as applied to the facts of the present case the act cannot be regarded as authority for doing what appellant has undertaken to do, because this would be equivalent to saying that a private business corporation may condemn the lands of a private owner for a private purpose. This cannot be done under the law.

Decree affirmed at cost of appellant.