## Interstate Cemetery Company Appeal.

Argued May 4, 1966.   Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Norman Snyder,* with him *Joseph W. deFuria* and *Albert E. Smith,* for appellant.

*George R. Specter,* Assistant Attorney General, with him *Robert W. Cunliffe,* Assistant Attorney General,

*John R. Rezzolla,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 27, 1966:

This condemnation case presents an interesting question of first impression in the appellate courts of Pennsylvania.

The facts were stipulated below and may be summarized as follows:[1]

The appellant, the Interstate Cemetery Company, has owned and operated a cemetery at the same location in Lower Chichester Township, Delaware County, since the year 1904. In 1965, the cemetery consisted of approximately 230 acres of land, all of which had been divided, laid out and plotted into graves and lots.

In May 1965, the Commonwealth of Pennsylvania, through its highway department, condemned for highway construction a portion of appellant's cemetery. That portion condemned has no bodies interred therein and the nearest interment to the land included in the proposed taking is 76 feet distant.

A Declaration of Taking was duly filed, as required by the provisions of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-402 et seq. (Supp. 1965). Preliminary objections filed by the appellant challenging the power of the Commonwealth to take the land involved were dismissed in the court below. This appeal followed.

The Act of April 5, 1849, P. L. 397, §1, 9 P.S. §8, provides: "It shall not be lawful to open any street, lane, alley or public road through any burial ground or cemetery within this commonwealth, any laws, here-

---

[1] In the briefs, facts are injected which do not appear in the stipulation. They will not be considered. The parties are bound by and limited to the facts to which they agreed of record. See, *Wolf v. Commonwealth,* 403 Pa. 499, 170 A. 2d 557 (1961).

tofore passed to the contrary notwithstanding: Provided, That this section shall not extend to the city or county of Philadelphia."

This particular statute is still extant and was never amended by the legislature during the intervening years. The court below concluded that it was not intended to apply to or be binding on the Commonwealth. We disagree.

The power of eminent domain in the Commonwealth is an attribute of its sovereignty and was not necessarily created by either the Constitution of Pennsylvania or statute: *Phila. Clay Co. v. York Clay Co.*, 241 Pa. 305, 88 A. 487 (1913). See also, Nichols, Eminent Domain §17 (2d ed. 1917). However, it arises only when legislative action points out the occasions, the modes and the agencies for its exercise. See, Snitzer, Penna. Eminent Domain, §201 (3)1 (1965), Nichols, Eminent Domain §19 (2d ed. 1917). See also, *Peters v. Reading,* 321 Pa. 220, 184 A. 23 (1936). That the legislature may grant exemptions in connection with the exercise thereof is not questioned and in fact it has done so in many instances. See, 14 Vale, Pennsylvania Digest, "Eminent Domain," §52, and statutes and cases cited therein.

By the Act of 1849, supra, the legislature clearly and unequivocally exempted cemeteries and burial grounds in this Commonwealth (with the exception of Philadelphia) from "taking", through eminent domain, for road and highway construction. However, the lower court ruled that the exemption or restriction does not apply to *state* road construction because the Commonwealth is not specifically named in the statute, and because the language thereof is general and does not irresistibly lead to the conclusion that the Commonwealth was to be bound thereby.

It is true " 'that a statute is never presumed to deprive the state of any prerogative, right or property

unless the intention to do so is clearly manifest, either by express terms or necessary implication' ": *Hoffman v. Pittsburgh,* 365 Pa. 386, 398, 75 A. 2d 649 (1950). By the same token, the fact that the Commonwealth is not specifically named in the statute is not, in itself, conclusive that it is not within the purview thereof. Compare, *Tunison v. Commonwealth,* 347 Pa. 76, 31 A. 2d 521 (1943). If the statute by necessary implication clearly manifests an intention to include the Commonwealth within its terms, this is sufficient. We are persuaded that such is the case here.

A close study of the Act of 1849, supra, clearly indicates that this enactment looked not to the condemnor, but rather to the land to be condemned, and manifested a strong policy in this Commonwealth against any disturbances of cemeteries or burial grounds for road construction. It specifically exempted and immunized such lands from condemnation for such purposes. It was, therefore, unnecessary to enunciate which bodies could condemn and which could not. All such lands were protected from the exercise of the power, regardless of the condemning body involved. Moreover, this policy has not been changed one iota by the legislature since it was first promulgated 116 years ago.[2]

The Commonwealth argues that, since it was not engaged in the activity of constructing roads in 1849, the legislature could not possibly have intended to restrict a power not then being used. While the Commonwealth's highway department may have come into being after the act was passed, there can be no question but that the Commonwealth and its predecessor,

---

[2] In recent years, in legislation governing the opening of roads by townships of the first and second class, the legislature has evidenced an intention of continuing this policy. See, Acts of May 27, 1949, P. L. 1955, §43, 53 P.S. §57006, and June 1, 1956, P. L. (1955) 2021, §13, 53 P.S. 66101.

the Colony of Pennsylvania, were exercising their power of eminent domain long before the nineteenth century. See, Lewis, "Eminent Domain in Pennsylvania," 26 P.S. 10-20 (1958). Therefore, we can reasonably assume that in 1849, the legislature was fully cognizant of the power of the Commonwealth in this regard and intended to restrict it in this area.

The legislative action here involved is in marked contrast to other kindred enactments. For instance, the Act of May 10, 1907, P. L. 196, §1, 26 P.S. §191, passed to protect historic revolutionary sites provides in pertinent part: "No corporation now incorporated under the laws of this state, . . . shall exercise the right of eminent domain as against the land now occupied by any building which was used during the colonial or revolutionary period . . . ."

In the above enactment, the prohibition is directed against the condemnor and it is significant that the Commonwealth is not included among the proscribed condemnors.

The historic reason for the passage of the Act of 1849, supra, is evident. Prior thereto, cemeteries which desired exemption from condemnation sought and obtained special legislation giving such protection. The unfairness of exempting some and not others, undoubtedly, moved the legislature to pass the all encompassing Act of 1849.

Further, the right of eminent domain is exclusively in the sovereign. While the right to exercise the power may be delegated, the body to which the power is entrusted has no authority beyond that legislatively granted. See, 13 P.L.E., "Eminent Domain," §4 and authorities cited therein. If it were not intended to restrict the sovereign itself by the Act of 1849, the statute would serve no useful purpose, since the delegated agency could not violate the mode legislated in the first place.

Finally, the Commonwealth contends that, since there are no interments in the land involved, it is not protected by the statute. In support of this argument, the Commonwealth suggests and fears that owners of cemeteries may acquire vast tracts of unnecessary land and thereby unjustly interfere with future highway construction. No such case is presented by this record. Herein, the stipulated facts clearly earmark the lands involved as present cemetery land. This decision is limited to the facts of this case.

Order reversed.

------

DISSENTING OPINION BY MR. JUSTICE COHEN:

I disagree with the majority opinion for several reasons. First and foremost, I believe that my colleagues have entirely disregarded the very nature of sovereign power. It is settled law in Pennsylvania that, "The power of eminent domain is an attribute of sovereignty, and every private owner holds his property subject to the right of the sovereign to take the same, or such part of it as may be required to serve the public use." *Philadelphia Clay Company v. York Clay Company,* 241 Pa. 305, 308-9, 88 Atl. 487 (1913). This being so, I would find that the Act of 1849 does not apply to the Commonwealth, for I see neither express statutory language nor necessary implication leading to that result. Accordingly, I would agree with the court below that the Act of 1849 does not bar the Commonwealth from exercising the power of eminent domain where cemetery lands are concerned.

However, assuming for the sake of argument that pursuant to the 1849 legislation, the Commonwealth was precluded from condemning burial ground, I would encounter no difficulty in determining that that statute has no effect in the instant litigation. No legislature can bind itself or its successors not to exercise the

sovereign power to take private property for public use, and that power cannot be surrendered, alienated or contracted away. *Contributors to the Pennsylvania Hospital v. City of Philadelphia,* 245 U. S. 20 (1917). In the instant matter, granting that the Act of 1849 was intended to apply to the Commonwealth, by the enactment of the Act of June 1, 1945, P. L. 1242, §210, 36 P.S. §670-210, the General Assembly has indicated that as regards cemetery land, the Commonwealth of Pennsylvania can exercise eminent domain. The 1945 statute authorizes the Secretary of Highways, with approval of the Governor, to change, alter or establish the width, lines, location or grades of any state highway or intersecting road in any township, borough or incorporated town in order to correct danger or inconvenience, or lessen the cost to the Commonwealth in the construction, reconstruction or maintenance thereof, and *to condemn an easement for highway purposes from all property required therefor.* As authorized by this legislation, the Declaration of Taking was filed in accordance with the Act of June 22, 1964, P. L. 84, Art. IV, §402, 26 P.S. §1-402 (Supp. 1965). The Act of 1945 provides for the condemnation of *all* required property, with no exceptions. Since the power of eminent domain is inalienable and since no legislature can bind itself or its successors not to exercise it, any legislative enactment that purports to limit the exercise of the power of eminent domain is invalid. 26 Am. Jur. 2d Eminent Domain §2. Accordingly, the 1945 General Assembly was free to pass legislation authorizing condemnation by the Commonwealth of all land privately owned in Pennsylvania. This having been done, there is no problem of statutory construction whereby the later act must be read against the earlier. The only statute pertinent here is the Act of 1945. Because that act, in and of itself, is broad enough to permit the taking of cemetery lands for the purposes stated there-

in, the Declaration of Taking here involved is a valid exercise of the Commonwealth's power of eminent domain, and no prior law is effective to alter that result.

As I view this matter, the right of the Commonwealth to exercise its eminent domain power over cemetery lands was never impinged upon by the Act of 1849. In fact, our official reports bear witness to the fact that the Commonwealth and agencies acting on its behalf, such as the Turnpike Commission and Department of Highways, have condemned burial grounds for highway construction with no objection raised by competent counsel that the Act of 1849 barred the taking. See *Lakewood Memorial Gardens, Inc. Appeal,* 381 Pa. 46, 112 A. 2d 135 (1955) ; *Hinnershitz Cemetery Co. v. Miller,* 37 Pa. D. & C. 571 (Berks Co. 1939).