# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the :
Commonwealth of Pennsylvania, :
Department of Transportation, of :
Right-Of-Way for State Route 0022, :
Section 034, in the Township of :
Frankstown :
 :
Stewart M. Merritts, Jr., :
                          Appellant :
 :
              v. : No. 763 C.D. 2017
 : Argued: February 5, 2018
Commonwealth of Pennsylvania, :
Department of Transportation :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  February 26, 2018**


Stewart M. Merritts, Jr. (Condemnee) appeals from the February 8, 2017 Order of the Court of Common Pleas of Blair County (trial court), which, in relevant part, overruled Condemnee's preliminary objections (POs) to the June 1, 2016 Declaration of Taking (Declaration) filed by the Commonwealth of Pennsylvania (Commonwealth), Department of Transportation (Department), to acquire a

drainage easement and temporary construction easement on Condemnee's Property.[1] On appeal, Condemnee argues the trial court erred in denying his POs because: (1) the trial court should have held an evidentiary hearing prior to holding oral arguments on the legal issues; (2) the Commonwealth lacks the legal authority to exercise eminent domain to condemn Condemnee's Property; (3) the condemnation is intended to benefit a private enterprise and is excessive; and (4) the condemnation violates the Storm Water Management Act (Storm Water Act).[2]

## I. Background

The facts relevant to our review are as follows. Condemnee's Property consists of two parcels of land located in Frankstown Township (Township), Blair County, one that is 1.11 acres and one that is 0.43 acres, which run along State Route 0022 (Route 22). (Trial Ct. Op., Feb. 8, 2017, Finding of Fact (FOF) ¶ 1.) The Property borders the Frankstown Branch of the Juniata River. Condemnee's "[P]roperty was part of the original land warrant given to Daniel Lowery by the Penn family proprietorship in 1755 and subsequent patent [that was] given to Andrew Lowery in 1783[.]" (*Id.* ¶ 2.)

On June 1, 2016, the Department, which is an agency of the Commonwealth, filed the Declaration seeking to acquire "a one thousand one hundred fifty (1150) square foot drainage easement and two thousand eight hundred ninety-six (2896) square foot temporary construction easement" on Condemnee's Property. (*Id.* ¶¶ 3, 4.) The condemnation of a part of Condemnee's Property

> was [part of] an intersection improvement project called the Canoe Creek Intersection Improvement Project [(Project)] to reroute and

---

[1] The trial court also granted the Department's Motion for Writ of Possession and denied the Department's Motion to Dismiss Preliminary Objections to the taking as moot.

[2] Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. §§ 680.1-680.17.

realign certain intersections along Route 22, add center turn lanes at certain intersections, and effect other safety improvements, including drainage.

(*Id.* ¶ 5.) Condemnee filed nine POs to the Declaration[3] asserting, relevant here, that: the Commonwealth did not have the authority to condemn his Property, (First PO ¶¶ 1-15, Reproduced Record (R.R.) at 23-26); the taking was for a private enterprise in violation of the Eminent Domain Code (Code)[4] and was excessive, (Second PO ¶¶ 1-11, R.R. at 26-28; Third PO ¶¶ 1-10, R.R. at 28-29; Eighth PO ¶¶ 3, 5-6, R.R. at 35-36); and the taking violates the Storm Water Act, (Eighth PO ¶¶ 6-12, R.R. at 35-37). The Department filed a Motion to Dismiss the POs (Motion to Dismiss) and a Motion for a Writ of Possession.

The trial court heard argument on December 21, 2016, at which Condemnee presented his chain of title and the parties expressed their respective positions. Condemnee requested an evidentiary hearing on the POs. The trial court proceeded with oral argument, indicating it would schedule an evidentiary hearing if issues arose that required the taking of evidence. Subsequently concluding that evidence was required, the trial court reconvened the matter for an evidentiary hearing on the POs on January 11, 2017. The Department presented exhibits and the testimony of several witnesses, including the civil engineer who is supervising the Project (Engineer), who was accepted as an expert witness. Condemnee presented his own testimony and exhibits.

---

[3] Pursuant to Section 306(a)(1), (3)(i), (iii) of the Eminent Domain Code, 26 Pa. C.S. § 306(a)(1), (3)(i), (iii), a condemnee may, within 30 days of being served with a notice of condemnation, "file preliminary objections to the declaration of taking" that challenge, *inter alia*, "[t]he power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated[,]" and the declaration of taking.

[4] 26 Pa. C.S. §§ 101-1106.

3

The Department's evidence described the Project Plan, which includes: replacing an existing 15-inch drain pipe with an 18-inch drain pipe across the Property "to upgrade drainage to existing standards;" and replacing an existing 24-inch drain pipe that drains into a stream with a 42-inch drain pipe "to help slow down pipe drainage and help stem the effects of erosion into the stream and the adjoining river." (FOF ¶¶ 11, 14, 16, 18.) Due to safety and efficiency concerns associated with the existing 15-inch pipe, the current location could no longer be used. The Department will own and maintain the drain pipes, and the 18-inch drain pipe will drain water away from Route 22.

As part of the overall Project, certain Township roads, including Flowing Spring Road, which runs along Condemnee's smaller parcel and along part of Condemnee's larger parcel, would be permanently removed by the Township. Township intended, subject to the requirements of The Second Class Township Code,[5] to vacate and "dedicate Flowing Spring Road and the accompanying right-of-way to Rails to Trails of Central Pennsylvania (Rails to Trails)." (*Id.* ¶¶ 7, 23.) This part of the Project "is to connect a trail for non-motorized use to Canoe Creek State Park with the Lower Trail Station, controlled by Rails to Trails . . . ." (*Id.* ¶ 21.) Part of Canoe Creek State Park is next to property owned by Rails to Trails, although the properties are separated by Route 22. The proposed trail will utilize "the closed Flowing Spring Road and right-of-way to connect" the two. (*Id.* ¶ 22.) Rails to Trails will be responsible for maintaining the trail.

Also as a part of the Project, the Department will construct a driveway for Condemnee to access Route 22 from the 0.43 acre parcel; however, current access to Condemnee's 1.11 acre parcel requires him to cross over a neighbor's property

_____

[5] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

4

because he cannot access that parcel from his smaller parcel due to its steep grade. The plans related to the proposed trail have no effect on the amount of Condemnee's Property the Department sought to condemn in the Declaration.

## II. Trial Court's Opinion

The trial court issued an opinion addressing each of Condemnee's POs. Condemnee's first relevant PO asserted that the Commonwealth lacks "'standing, power, right, jurisdiction or authority for condemnation or to take land in this instant matter'" because the title to the Property dates back to the land warrant issued to Daniel Lowery in 1755 from the William Penn proprietary, which subsequently deeded it to Alexander Lowery, "who received a patent in 1783." (Trial Ct. Op. at 7.) Condemnee argued that, because the land patent provided a claim that was free from all restrictions and reservations, the only way the Commonwealth could condemn the land was if it had a connection or ownership interest in the land at the time it became a state. Because the Commonwealth never owned or claimed possession to his land, it "does not have privity of title with the Condemnee, which, the Condemnee assert[ed], must be proven to take the easement in question." (*Id.*)

The trial court rejected Condemnee's contention that, in order to exercise eminent domain over his Property, the Commonwealth had to have some connection or have privity of title to the Property. The trial court held that the Commonwealth's eminent domain power does not derive from it having privity with the original title holder or having a relationship at the time of the original conveyance but from its power as a sovereign, a power that cannot be extinguished. It concluded that, while the United States and Pennsylvania Constitutions and legislative enactments could place limits on the Commonwealth's ability to use this power, such "power is

5

inherent in the Commonwealth's existence and is not reliant on constitutional and legislative enactment." (*Id.* at 10 (citing *In re Legislative Route 1018, Section 4, Lower Chichester Twp., Del. Cnty.*, 222 A.2d 906, 908 (Pa. 1966)).) The trial court pointed out that to accept Condemnee's argument would allow any landowner who can trace his or her deed back to the original colonial grant "to circumvent over one hundred fifty (150) years of eminent domain law" and would "usurp the sovereignty of the Commonwealth by claiming a title in land superior to the sovereign power of eminent domain." (*Id.* at 10, 13.)

The trial court considered Condemnee's other arguments about why the Commonwealth lacked jurisdiction to take his Property and likewise concluded that they were without merit. In particular, the trial court held that the cases Condemnee cited were not applicable because they did not involve the use of eminent domain to acquire an easement.

Condemnee's next pertinent POs asserted that the Commonwealth exceeded its authority to condemn property because of the transfer of the right-of-way in Flowing Spring Road to Rails to Trails, a private entity, and that the condemnation was excessive because there was no need to change the size of the drain pipes. Condemnee asserted this transfer is a "silent" condemnation of lands across his property via an agreement between the Department, Township, and Rails to Trails. (*Id.* at 14.) The trial court dismissed all of Condemnee's arguments related to the future transfer of Township's right-of-way to Rails to Trails because the Declaration at issue concerned only the Department's taking of the 1,150 square foot drainage easement and the 2,896 square foot temporary construction easement. Therefore, the trial court concluded, the issue of Flowing Spring Road, which is controlled by Township, was collateral to the proceedings before it, and the POs against the

6

Department related to Flowing Spring Road were not proper preliminary objections under the Code. Additionally, the trial court recognized that condemning these easements to install larger drain pipes was for a public purpose because the new pipes were part of the Project to improve the Route 22 corridor by addressing drainage, safety, and environmental concerns.

Condemnee's last relevant PO averred that the taking violated the Storm Water Act by vesting maintenance of the drainage pipes being installed in Rails to Trails, a private entity. The trial court held that this objection also was collateral to the proceeding on this Declaration and not a proper basis for a preliminary objection under the Code. However, it stated that, even if the objection was not collateral, Condemnee's contention would fail because the Department's Engineer testified that the new drain pipes were a part of the Project and the Department would be responsible for maintaining the new pipes. Accordingly, the trial court overruled this PO.

Condemnee appealed[6] and, at the direction of the trial court, filed a Statement of Errors Complained of on Appeal (1925(b) Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b).[7] Therein, Condemnee raised the following: whether the trial court erred in denying all of his preliminary objections; whether the trial court "erred by ruling that the

---

[6] Condemnee appealed to the Superior Court, which transferred his appeal to this Court.
[7] Rule 1925(b) provides:

If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b).

7

Commonwealth had statutory or any authority to condemn the land in question";
whether the trial court "erred in finding eminent domain applies even though this is
a taking for a private enterprise"; and whether the trial court "erred by finding that
this condemnation would not violate the" Storm Water Act. (Condemnee's 1925(b)
Statement, Condemnee's Br., App. A3.) The trial court issued a responsive opinion
pursuant to Pa.R.A.P. 1925(a), providing further explanation for overruling
Condemnee's POs. This matter is ready for disposition by this Court.[8, 9]

### III. Discussion

*A. Whether the trial court erred by hearing oral argument before holding an evidentiary hearing on Condemnee's POs.*

Condemnee first argues, based on *Department of Transportation v. Florek*,
455 A.2d 1263 (Pa. Cmwlth. 1983), and *Werts v. Luzerne Borough Authority*, 329
A.2d 335 (Pa. Cmwlth. 1974), that the trial court erred by hearing oral argument on
the POs on December 21, 2016, prior to its holding an evidentiary hearing on January

---

[8] An appellate court's review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking "is limited to a determination of whether the trial court abused its discretion or committed an error of law." *In re Redevelopment Auth. of City of Phila.*, 938 A.2d 341, 345 (Pa. 2007).

[9] Condemnee filed a Petition for Stay (Petition) with this Court, seeking to stay the work being done on the Project under the Declaration that would directly affect his Property pending final disposition of this appeal. After argument was heard by a single-judge on December 15, 2017, by telephone conference, this Court denied the Petition because it had not first been filed with the trial court as required by Rule 1732(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1732(a). *In Re: Condemnation by the Commonwealth of Pa., Dep't of Transp., of Right-Of-Way for State Route 0022, Section 034, in the Twp. of Frankstown* (Pa. Cmwlth., No. 763 C.D. 2017, filed Dec. 19, 2017), slip op. at 5. However, we directed that argument on and disposition of Condemnee's appeal would be expedited.

11, 2017. He also asserts, citing Section 406(e) of the Eminent Domain Code of 1964, *formerly* 26 P.S. § 1-406(e)[10] (providing that where issues of fact are raised in preliminary objections, the trial court is required to "take evidence by depositions or otherwise"), that an evidentiary hearing was required to be held first because issues of fact were raised. The Department responds that *Florek* and *Werts* are distinguishable because, unlike in those cases, Condemnee did receive an evidentiary hearing prior to the trial court overruling his POs.

We have carefully reviewed the record and precedent cited by Condemnee, and discern no error in the trial court's actions. In *Florek* and *Werts*, the condemnees' preliminary objections were dismissed because they had not filed briefs in violation of local rules and they were never afforded an evidentiary hearing prior to the dismissal of their objections. Here, however, while the trial court initially heard oral argument, it held the evidentiary hearing on the merits of the POs based on the existence of issues of fact. At that evidentiary hearing, both Condemnee and the Department presented evidence to support their positions. Only after that evidentiary hearing did the trial court dismiss Condemnee's POs based on the evidence and argument presented by the Department and Condemnee, not because Condemnee violated a local procedural rule. Thus, *Florek* and *Werts* are distinguishable.

> *B. Whether the Commonwealth has the legal authority to condemn Condemnee's property.*

Condemnee reasserts the arguments he made before the trial court, namely "that the original land warrant and subsequent patent given to Andrew Lowery[]

---

[10] Section 406(e) of the Eminent Domain Code of 1964, along with the remainder of that statute, was repealed by Section 5(2) of the Act of May 4, 2006, P.L. 112. The entire Eminent Domain Code of 1964 was replaced by the current Code. The same requirement is now found at Section 306(f)(2) of the Code, 26 Pa. C.S. § 306(f)(2).

9

[renders] the [P]roperty not subject to eminent domain[.]" (Condemnee's Br. at 15.) Arguing that a patent is the highest evidence of title and provides full legal title in its holder, Condemnee asserts that the Commonwealth lacks the authority to file the Declaration or take any property from him because it has not proven some connection to or ownership of the Property at the time it became a state. Absent the reservation of some rights by the colony of Pennsylvania in the original patent, Condemnee argues the Commonwealth has not retained any reversionary interest or other right to exercise control over the Property after 1783, when the patent/warranty deed became final. Therefore, he maintains, the Commonwealth has no privity to the title of the Property and the assertion of such an interest would be barred by the doctrine of laches. Condemnee maintains that the United States Supreme Court, in *Summa Corporation v. California ex rel. State Lands Commission*, 466 U.S. 198 (1984), and *United States v. Coronado Beach Company*, 255 U.S. 472 (1921), addressed the validity of land patents versus claims made by the government and held that the government's claims in those matters had to have been asserted in the original patent proceedings or were barred. Condemnee asserts that the same principles should be applied in this matter and, if so applied, the result would be a determination that the Commonwealth lacks legal authority to condemn any part of Condemnee's Property.

The Department replies that the Commonwealth's authority to exercise eminent domain derives from its power as a sovereign, limited only by the constitution and statute. According to the Department, it has been authorized by the General Assembly to use eminent domain "for all transportation purposes" pursuant to Section 2003(e)(1) of The Administrative Code of 1929,[11] 71 P.S. § 513(e)(1).

_____

[11] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 513(e)(1).

10

While there are some limits to the exercise of eminent domain, the Department maintains that the General Assembly has not established a limit based on whether the land being condemned was first acquired by warrant or patent or when such warrant or patent was issued. Moreover, the Department argues the Commonwealth is not required to establish privity of title to condemn property for a public use, including for transportation purposes, because that right is retained by the Commonwealth as a sovereign and could not be conferred to a patent grantee. (Dep't's Br. at 14-15 (citing *e.g.*, *Smith v. Dep't of Revenue*, 998 P.2d 675, 677 (Or. 2000) (stating that "the government cannot confer its privileges and immunities upon patent grantees")).) The Department asserts that, contrary to Condemnee's arguments, the United States Supreme Court has not held that land transferred by patent is not subject to condemnation but has allowed such condemnation with the payment of just compensation. (*Id.* at 14-17 (citing *Coronado Beach Co.*, 255 U.S. at 486-88; *Cherokee Nation v. S. Kansas Ry. Co.*, 135 U.S. 641 (1890)).)

The trial court held that the Commonwealth's authority to exercise eminent domain in order to acquire private property for a public purpose is an incident of its status as a sovereign and cannot be infringed upon or limited in the manner Condemnee asserts. The trial court's determination is amply supported by precedent.

"[L]ong before the nineteenth century" "the Commonwealth **and its predecessor, the Colony of Pennsylvania**, . . . exercise[ed] their power of Eminent Domain[.]" *Legislative Route 1018*, 222 A.2d at 909 (emphasis added). In 1866, our Supreme Court explained that the Commonwealth's right "to take private property without the owner's assent on compensation made . . . exists in her **sovereign right** of eminent domain . . . . The power arises out of that natural

11

principle which teaches that **private convenience must yield to the public wants**." *Appeal of Lance*, 55 Pa. 16, 25 (1866) (emphasis added). The Supreme Court restated, in 1913, that the power of eminent domain "is an attribute of sovereignty, and **every private owner holds his property subject to the right of the sovereign** to take the same, or such part of it as may be required to serve the public use." *Phila. Clay Co. v. York Clay Co.*, 88 A. 487, 487 (Pa. 1913) (emphasis added). "The power is not necessarily created either by Constitution or statute, but **is an inherent attribute of sovereignty itself**." *Id.* at 488 (emphasis added). Even the United States Supreme Court has stated that there can be no "doubts [as to] the existence in the State governments of the right to eminent domain,—a right distinct from and paramount to the right of ultimate ownership. It grows out of the necessities of their being, not out of the tenure by which lands are held." *Kohl v. U.S.*, 91 U.S. 367, 371 (1875).

These pronouncements are not premised on the Commonwealth having an existing or prior interest in the property it seeks to condemn – rather, the power of eminent domain is inherent in the Commonwealth as a sovereign. This power, like the power of taxation and the police power, "exist[s] because the state exists"; "[t]hey are not rights reserved," but "rights inherent in the state as sovereign." *In re Condemnation of 110 Wash. St.*, 767 A.2d 1154, 1158 (Pa. Cmwlth. 2001) (quoting *People v. Adirondack Ry. Co.*, 54 N.E. 689, 692 (N.Y. 1899), *aff'd sub nom. Adirondack Ry. Co. v. New York*, 176 U.S. 335 (1900)). "The state cannot surrender the[se rights] because it cannot surrender a sovereign power. It cannot be a state without them." *Id.* Thus, the Commonwealth was not required to "reserve" its right to eminent domain because that right is inherent to its sovereignty and a necessity to its very being.

That the Property was originally conveyed by patent is of no consequence. The United States Supreme Court has explained that "[t]he fact that [a property owner] holds the[] lands in fee-simple under patents from the [government] is of no consequence" because the government "may exercise the right of eminent domain . . . for purposes necessary to the execution of the powers granted to the general government by the constitution," which are "essential to the independent existence and perpetuity of the" government. *Cherokee Nation*, 135 U.S. at 656. In that case, the United States sought to condemn property for the construction of a railroad within the Cherokee Nation, which had obtained the lands by patents and treaty. That Court rejected an argument, similar to the one Condemnee asserts here, that the Cherokee Nation's lands were not subject to condemnation because they had been conveyed to it in fee simple by a patent on the basis that the power of eminent domain is "essential to the independent existence and perpetuity of the" government. *Id.* Accordingly, the Commonwealth's authority to exercise eminent domain to acquire land for a public purpose is based on its inherent rights as a sovereign and the facts that the Property was conveyed to Andrew Lowery by patent or that the Commonwealth, or its predecessor, did not reserve an interest in the Property in that patent do not hinder its ability to exercise that right.

However, as the Department recognizes, a sovereign may exercise the power of eminent domain "when legislative action points out the occasions, the modes and the agencies for its exercise[,]" and "the legislature may grant exemptions in connection with the exercise thereof . . . ." *Legislative Route 1018*, 222 A.2d at 908. Article 1, section 10 of the Pennsylvania Constitution provides, in pertinent part, that "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10.

13

Thus, the Pennsylvania Constitution authorizes the exercise of eminent domain for acquiring property for public use with the payment of just compensation. Section 2003(e)(1) of The Administrative Code of 1929 authorizes the Department

> [t]o acquire, by . . . condemnation . . . , land in fee simple or such lesser estate or interest as it shall determine, in the name of the Commonwealth, for all transportation purposes . . . and to erect on the land thus acquired such structures and facilities . . . as shall be required for transportation purposes.

71 P.S. § 513(e)(1). Transportation purposes include "reconstructing, repairing and maintaining State designated highways and other transportation facilities[.]" *Id.* We have held that

> if the purpose of the condemnation is in furtherance of [the Department's] responsibility to provide a fast, safe and efficient transportation system in the Commonwealth with due regard to public health and safety, then [the Department] has the authority and the duty to proceed with that condemnation if it is incidental to the reconstruction, repair or maintenance of a State designated highway.

*Appeal of Corcoran*, 537 A.2d 384, 385 (Pa. Cmwlth. 1988) (footnote omitted).

The condemnation here, which is to install new drainage facilities as a part of the Project to improve the existing Route 22 interchange for safety reasons, is authorized by these provisions. While the General Assembly has set some limits on the Commonwealth's ability to exercise this authority, such as prohibiting the taking of land from cemeteries for roads, *Legislative Route 1018*, 222 A.2d at 908, Condemnee points to no legislative limitation based on when a property's warrant or patent was issued. Absent a limitation against its use under these circumstances, the Commonwealth has the authority to use eminent domain here.

Furthermore, the cases Condemnee relies upon are distinguishable. In *Coronado Beach Company*, the United States condemned certain property that had been originally granted to the owner's predecessor in title by the Mexican government, whose interest was later confirmed by a federal patent issued pursuant to the terms of the treaty ending the Mexican-American War and legislation enacted to comply with that treaty (Act of 1851).[12] *Coronado Beach Co.*, 255 U.S. at 485-88. However, in order to reduce the amount of compensation owed to the property owner, the United States asserted that the State of California had a pre-existing interest in certain tide lands claimed to be owned by the property owner. *Id.* at 486-88. The Supreme Court rejected this assertion because the federal patent supported the predecessor in title's ownership of the tide lands and could not, subsequently, be impeached by the assertion of California's interest, which had not been raised during the patent proceedings. *Id.* at 488. Here, the Commonwealth is not asserting any prior ownership interest in the Property, in order to reduce the amount of just compensation it will be required to pay Condemnee, but is exercising, as the United States did in *Coronado Beach Company*, its sovereign authority of eminent domain.

In *Summa Corporation*, California asserted an interest, **via a public trust easement**,[13] in a lagoon conveyed by Mexico to the owner's predecessor in title, whose interest was confirmed by a Federal patent under the Act of 1851. *Summa Corp.*, 466 U.S. at 200, 202-03. Seeking to make improvements to the lagoon **without having to exercise eminent domain and compensate the landowners**,

---

[12] The United States Supreme Court has observed that patents issued pursuant to the Act of 1851 are unique and provide more protection to the patent holders than other Federal patents. *Summa Corp.*, 466 U.S. at 205-07.

[13] The public trust easement asserted by California "has been interpreted to apply to all lands which were tidelands" when it became a state and provided California with "an overriding power to enter upon the property and possess it, to make physical changes in the property, and to control how the property [wa]s used." *Id.* at 204-05 (citations omitted).

California asserted that the public trust easement existed due to the lagoon being tide land at the time it became a state. *Id.* at 200. Citing *Coronado Beach Company*, the United States Supreme Court held that California's claim of an easement had to have been "asserted in the patent proceedings or be barred." *Summa Corp.*, 466 U.S. at 209. Here, the Commonwealth is not seeking to assert a pre-existing servitude on Condemnee's Property, thereby releasing it from its obligation to pay Condemnee, but is exercising its inherent sovereign power of eminent domain.[14]

For these reasons, the trial court correctly overruled Condemnee's PO based on the conclusion that the Commonwealth has the legal authority to issue the Declaration and to condemn the Property.

> *C. Whether the exercise of eminent domain here is improper because part of the taking at issue is intended to benefit a private enterprise and is excessive.*

Condemnee next argues the trial court erred in overruling his PO, asserting that the taking here is unconstitutional and violates Section 204(a) of the Property Rights Protection Act, 26 Pa. C.S. § 204(a),[15] because the Project involves the taking of land for a private enterprise. According to Condemnee, because the Project's plot plans reference the Township's future intent to vacate Flowing Spring Road, a public

---

[14] A careful review of the other cases cited by Condemnee reveals that they are similarly inapplicable and unpersuasive. Those cases do not involve the exercise of eminent domain, but the assertion of claims by private individuals or entities against patents issued to another private individual or entity.

[15] Section 204(a) of the Property Rights Protection Act prohibits "the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise[.]" 26 Pa. C.S. § 204(a). A taking via condemnation "will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise. . . . In considering whether a primary public purpose was properly invoked, this Court has looked for the 'real or fundamental purpose' behind a taking." *Middletown Twp. v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007) (citations omitted). "Stated otherwise, the true purpose must primarily benefit the public." *Id.* (emphasis omitted).

road, and transfer the right-of-way to Rails to Trails, a private entity, for a recreational trail, the taking is for the benefit of a private enterprise. Condemnee argues it is well-settled "that once a road loses its public character as a road, the adjoining landowners take possession to the center of the road." (Condemnee's Br. at 31 (citing *Ferko v. Spisak*, 541 A.2d 327 (Pa. Super. 1988)).) Thus, Condemnee contends, the plan to transfer the right-of-way to Rails to Trails after the vacation of Flowing Spring Road not only is a taking of Condemnee's interest to the center of that vacated road for the benefit of a private interest but also impairs his ingress and egress to the lower 1.11 acres of the Property. Alternatively, Condemnee argues that the condemnation for a drainage easement to allow the Department to replace the 15-inch drain pipe with an 18-inch drain pipe is excessive because the 15-inch pipe is sufficient to handle the current drainage.

The Department responds that Condemnee's arguments related to Flowing Spring Road are beyond the scope of its condemnation and, therefore, are collateral issues which cannot be raised via preliminary objections under the Code. It further argues that the taking of the drainage easement and the construction easement were for transportation purposes, a recognized public purpose, because the easements were necessary to improve drainage as a part of the overall safety improvements to Route 22. The Department points to the credited testimony of its expert, Engineer, regarding the need for the change in location and/or size of drain pipes to remedy safety and environmental issues associated with the current drainage facilities as part of the Project. Based on this evidence, which was not refuted by Condemnee, the Department asserts the trial court correctly held that the drainage facilities were a necessary part of the Project, the purpose of which was to improve the safety of the highway.

17

Section 306(a) of the Code authorizes the filing of "preliminary objections **to the declaration of taking.**" 26 Pa. C.S. § 306(a) (emphasis added). These preliminary objections are limited to challenges to: (i) the power of the condemnor to take the condemned property; "(ii) [t]he sufficiency of the security[;] (iii) [t]he declaration of taking[; and] (iv) [a]ny other procedure followed by the condemnor." 26 Pa. C.S. § 306(a)(3)(i)-(iv). The filing of preliminary objections "'are intended . . . to resolve expeditiously all legal and factual challenges to **the declaration of taking** before the parties move to the second distinct proceeding of qualifying damages.'" *In re Condemnation of Dep't of Transp., of Right of Way for State Route 79, Section W10, a Ltd. Access Highway, in the Twp. of Cecil*, 798 A.2d 725, 731 (Pa. 2002) (emphasis added) (quoting *W. Whiteland Assocs. v. Dep't of Transp.*, 690 A.2d 1266, 1268 (Pa. Cmwlth. 1997)). Thus, the scope of preliminary objections in eminent domain proceedings is limited. *Appeal of Gaster*, 556 A.2d 473, 478 (Pa. Cmwlth. 1989). Objections that do not fall within those described above are not proper subjects for preliminary objections to a taking, but are collateral in nature and will not be considered. *In re Condemnation of Prop. Situate in Perry Twp.*, 938 A.2d 517, 521 (Pa. Cmwlth. 2007). Collateral matters include challenges to the procedure in which a municipality adopts an ordinance or resolution authorizing a condemnation or an assertion that the taking does not comply with a statute or regulations. *Id.* at 520-21.

The trial court concluded that Condemnee's objections to the Department's Declaration, based on the Township's future plans to vacate Flowing Spring Road and transfer the right-of-way to Rails to Trails were not proper preliminary objections here because they involve issues that are collateral to **this Declaration**. (Trial Ct. Op. at 14.) A review of the record confirms the trial court's conclusion.

18

The Declaration attaches drawings authorizing the Department's acquisition of a right-of-way and "[a] Schedule of Property Condemned" (Schedule), which identifies Condemnee's Property as being condemned by the Department to obtain "a drainage easement and a temporary construction easement" for transportation purposes. (R.R. at 4-5.) The Schedule references the parcel number for Condemnee's Property and sheet #92 of the Project Plan, which indicates where the 1,150 square foot drainage easement and 2,896 square foot temporary construction easement will be. (*Id.* at 7, 57.) There is no mention in the Declaration of the Township's vacation of Flowing Spring Road or the transfer of any right-of-way to Rails to Trails. Thus, Condemnee's challenge based on the **Township's future intent** to vacate Flowing Spring Road and transfer of the right-of-way to Rails to Trails is collateral to **the Department's Declaration** and is not a proper subject of preliminary objection in this eminent domain proceeding.[16]

---

[16] This does not mean that if the Township decides to vacate Flowing Spring Road and transfer the right-of-way to Rails to Trails its decision will escape review. In deciding whether to vacate a road, a second class township must comply with the requirements of Section 2305 of The Second Class Township Code, added by Section 1 of the Act of November 9, 1995, P.L. 350, *as amended*, 53 P.S. § 67305. In relevant part, this Section requires the following:

(a) Before the passage of any ordinance for . . . vacating of any road or highway or section thereof, the board of supervisors shall give ten days' written notice to the owners of property adjacent to the road or portions thereof involved of the time and place set for a hearing on the proposed ordinance.

(b) If the board of supervisors votes in favor of exercising the power, it shall enact the necessary ordinance and file a copy of the ordinance, together with a draft or survey of the road showing the location and width thereof, in the office of the clerk of the court of common pleas.

(c) Any resident or property owner affected by the ordinance may within thirty days after the enactment of the ordinance of the board of supervisors, upon entering in the court sufficient surety to indemnify the board of supervisors for

19

The only assertion by Condemnee that relates to the Department's Declaration is his argument that the existing 15-inch drain pipe is sufficient to handle the current drainage situation and, therefore, the drainage easement to install the new 18-inch pipe on the Property is excessive. It is well settled that a taking must not be excessive for the actual purpose of the public use. *Middletown Twp. v. Lands of Stone*, 939 A.2d 331, 338 (Pa. 2007). "[I]nasmuch as property cannot constitutionally [be] taken by eminent domain except for public use, no more property may be taken than the public use requires-a rule which applies both to the amount of property and the estate or interest to be acquired." *In Re: Condemnation by the Beaver Falls Mun. Auth. for Penndale Water Line Extension v. Beaver Falls Mun. Auth.*, 960 A.2d 933, 937 (Pa. Cmwlth. 2008) (emphasis and citation omitted). "The quantum of land to be acquired is, within reasonable limitations, a matter within the condemnor's discretion." *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth. 1994) (citing *Truitt v. Borough of Ambridge Water Auth.*, 133 A.2d 797 (Pa. 1957)).

Here, Engineer testified that the Project is intended to improve the safety along the Route 22 corridor, which includes "improving . . . drainage along the

all costs incurred in the proceedings, file exceptions to the ordinance together with a petition for a review. Upon receipt of the exception and surety, the court of common pleas shall appoint viewers from the county board of viewers for the purpose of reviewing the ordinance and exceptions thereto.

(d) After the expiration of the term allowed for filing exceptions or upon the order of the court upon disposition of any exceptions, the court of common pleas, on application by petition by the board of supervisors or any person interested, shall appoint three viewers from the county board of viewers to assess the damages and benefits occasioned by the proceeding unless the damages and benefits are otherwise agreed upon.

*Id.* In addition, Section 502(c)(1) of the Code authorizes the filing of a petition for the appointment of viewers by "[a]n owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking . . . ." 26 Pa. C.S. § 502(c)(1).

20

[Route] 22 corridor." (R.R. at 119.) Engineer provided numerous reasons why it is necessary to change the location and size of the existing drain pipes. First, he explained that numerous safety reasons existed for moving the 15-inch pipe from its present location, stating the inlet of that pipe is just a hole that sits right off Route 22 into which vehicles, pedestrians, or bicyclists could fall into if they go off the road. (*Id.* at 130-31.) Second, Engineer observed that the existing pipe inlet end is "not very efficient from a hydraulic standpoint" and indicated the Department must change the pipe's location and construct a "rip-rap apron" to improve erosion protection at the outlet end of the pipe. (*Id.* at 131-32, 136-37, 139.) Third, in response to a question about replacing the 15-inch pipe with an 18-inch pipe, Engineer explained that while there was not "a drainage issue per say [sic] with the capacity of the pipe[,]" the Department's policy is that when it is installing a pipe that it is going to maintain, it does not "go below 18 inches . . . because anything below 18 inches [is] . . . susceptible to blocking." (*Id.* at 134-35.) He stated that because "the inlet and outlet ends of the pipe were clearly substandard[,]" the Department had to move the pipe and was replacing it with the 18-inch pipe in accordance with its policy. (*Id.* at 135.) Similarly, Engineer explained that it was necessary to replace the existing 24-inch drain pipe with the new 42-inch drain pipe for a variety of environmental reasons, including to address water quality issues, decrease the velocity of water entering into the stream beneath the pipe, and to decrease sediment erosion into that stream. (*Id.* at 127-28, 131-32.) Engineer opined, based on his years of experience constructing and maintaining these facilities, the topography involved in the Project, and the environmental and permit restrictions with which the Department must comply, that the Department was taking only the minimum amount necessary for the drainage easement and temporary

construction easement. (*Id.* at 134.) The trial court credited Engineer's testimony. (Trial Ct. Op. at 17.)

As stated above, the purpose of this condemnation is to improve the safety along the Route 22 corridor by, *inter alia*, improving the drainage along that corridor, which qualifies it as a transportation purpose, *i.e.*, a public purpose, under Section 2003(e)(1) of The Administrative Code of 1929, 71 P.S. § 513(e)(1). The credited safety, drainage, and maintenance reasons identified by Engineer for moving the existing 15-inch pipe and replacing it with an 18-inch pipe, and for replacing the 24-inch pipe with the 42-inch pipe, along with his credited expert opinion that the drainage easement and temporary construction easement being condemned were the minimum necessary, support the trial court's conclusion that the condemnation here was for a public purpose and not an excessive taking. Thus, the trial court correctly overruled this PO.

### D. Whether the condemnation is improper because it violates the Storm Water Act.

Condemnee last asserts the trial court erred in finding that the condemnation here will not violate the Storm Water Act. Condemnee argues that the Storm Water Act and accompanying regulations place the responsibility for, *inter alia*, maintaining storm water facilities and storm water management on those engaged in the alteration or development of the earth disturbance activity. He contends that these provisions are violated here because, although the Department is constructing the drainage pipes, the responsibility of maintaining those pipes is being transferred to Rails to Trails. The Department argues, in response, that this objection involves an issue collateral to the Declaration and, therefore, is not properly raised as a preliminary objection under the Code.

22

The trial court overruled this PO because, *inter alia*, it is collateral to the Declaration and, therefore, not properly raised as a preliminary objection to the taking. A challenge to a declaration of taking based on a taking's alleged violation of other statutes or regulations is collateral and not the proper subject of a preliminary objection in eminent domain proceedings. *See, e.g.*, *Perry Twp.*, 938 A.2d at 519, 521 (claimed violation of the notice and publishing requirements for an ordinance under Section 1601 of The Second Class Township Code, 53 P.S. § 66601); *Gaster*, 556 A.2d at 475, 478 (taking alleged to violate state constitution and statutes and federal environmental statute and regulations); *In re Legislative Route 58018*, 375 A.2d 1364, 1367-68 (Pa. Cmwlth. 1977) (taking alleged to violate the environmental rights provision of the state constitution). Accordingly, the trial court correctly concluded that Condemnee's PO averring that the Declaration violates the Storm Water Act is a collateral issue not properly raised as a preliminary objection under the Eminent Domain Code.

## IV.    Conclusion

Because the Commonwealth has the sovereign authority to condemn private property for a public purpose, which includes the Department's power to condemn private property for transportation purposes, 71 P.S. § 513(e), and the taking identified in the Declaration is for a public purpose and is not excessive, the trial court correctly overruled those POs. Moreover, the trial court also correctly overruled those POs that involved objections that were collateral to this Declaration and, therefore, not the proper subjects of preliminary objections under the Code. Accordingly, the trial court's February 8, 2017 Order is affirmed.

23

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the
Commonwealth of Pennsylvania,
Department of Transportation, of
Right-Of-Way for State Route 0022,
Section 034, in the Township of
Frankstown

Stewart M. Merritts, Jr.,
               Appellant

       v.

Commonwealth of Pennsylvania,
Department of Transportation

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 763 C.D. 2017

# **O R D E R**

**NOW**, February 26, 2018, the February 8, 2017 Order of the Court of Common Pleas of Blair County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge